James C. Webster and Baronig Baron, as Executors of the Estate of Lisa W. Sandford, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 83466.   Promulgated August 9, 1938.

James C. Webster, Esq., for the petitioners.
Frank T. Horner, Esq., for the respondent.

OPINION.

HARRON: The petitioner alleges that the Commissioner erred in including in the value of the gross estate all of the items referred to above and in allowing a deduction of only $1,614.50 for funeral expenses.

(1) *Trusts created December 31, 1929, and July 12, 1932.*—The decedent executed a trust December 31, 1929, and conveyed to the trustee, the Guaranty Trust Co. of New York, securities of a total par value of $122,000. This trust will be referred to as the 1929 trust. Paragraph 4 of the 1929 trust reserved to the grantor the right to withdraw not in excess of 50 percent of the total amount of securities and properties comprising the corpus of the trust. The decedent exercised the right to withdraw securities and in June 1932 withdrew 50 percent of the original amount of securities and properties placed in trust according to market values of July 7, 1932, directing that the securities be turned over to Baronig Baron, her attorney in fact. Thereafter, on July 12, 1932, decedent executed a trust indenture pursuant to which she conveyed to Baronig Baron as trustee the securities withdrawn from the 1929 trust. This trust will be referred to as the 1932 trust. The decedent did not make any additional withdrawals from the 1929 trust and it remained in force up to the time of her death, consisting of the original securities and properties minus the 50 percent amount of securities withdrawn in 1932. Decedent reserved the right to receive the income of each trust during her life.

From December 31, 1929, to July 12, 1932, the Guaranty Trust Co., trustee of the 1929 trust, was not called upon to make any payments out of principal of the trust for the grantor except in the one instance when decedent withdrew 50 percent of the securities. In the 1932 trust indenture it is stated, in explanation of some of the provisions, that Baronig Baron, the adopted son, "has, from time to time, to make certain expenditures of principal as well as interest for her [decedent's] support, maintenance and comfort and the providing to the said grantor living expenses and luxuries including the maintenance and care of automobiles." It is provided in paragraph 9 that the trustee, Baronig Baron, shall have power to withdraw from the principal of the (1932) trust such sums as shall be necessary for the best interests of the grantor in his own discretion or on the request of the grantor. It also appears that decedent considered that the 1932 trust would serve such purposes, for an intent is expressed in the trust that it would run "smoothly" if its terms could be carried out without the formality of decedent's giving receipts for money or

securities to Baronig Baron, trustee, and if he should not be required to render accountings to any person.

With this brief reference to the terms of the two trusts, we turn to consideration of some of the contentions of the parties. It is the contention of petitioner's counsel that the 1932 trust was but a "continuation" of the 1929 trust, so that the 1932 trust does not come within the amendments of section 302 (c) of the Revenue Act of 1926 effected in 1931 and 1932. Petitioner's counsel offers little to support this theory. We think that this contention is not sound. The 1929 trust differed somewhat in its terms from the 1932 trust, as indicated by the respective paragraphs of the trusts quoted in the findings of fact. The decedent did not reserve any power to amend the 1929 trust, so that it would be difficult to construe the 1932 trust as an amendment of the 1929 trust. The trustee appointed under the 1932 trust was not a joint trustee with the trustee under the 1929 trust. The Guaranty Trust Co. did not join in the execution of the 1932 trust, which was executed only by the grantor and the new trustee, Baronig Baron. When decedent withdrew securities from the 1929 trust they became her property to do with as she desired. The property withdrawn was conveyed to a new trust. Whatever remainder interest Baronig Baron had received in these securities under the 1929 trust when it was created was divested when decedent withdrew the securities from the 1929 trust. It is immaterial that Baronig Baron, the beneficiary of the 1929 trust, was made the beneficiary of the 1932 trust. He might not have been made the beneficiary and might not have received again a remainder interest in the securities that had been withdrawn from the 1929 trust. We hold that the 1932 trust was a new trust, created July 12, 1932. Congress, by Joint Resolution, March 3, 1931,[1] amended the provisions of section 302 (c) of the Revenue Act of 1926 so as to include in the gross estate of a decedent the value, at the time of death, of property to the extent of any interest which the decedent had transferred by trust during life, if the decedent retained the right to receive income from the property transferred. Clearly, the 1932 trust, involving transfers made subsequent to March 3, 1931, comes within the provisions of the amendment to section 302 (c). *Security First National Bank of Los Angeles,*

---

[1] Joint Resolution of Congress of March 3, 1931:

*"Resolved,* * * * That the first sentence of subdivision (c) of section 302, of the revenue act of 1926, is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of or the income from the property, or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth." [See also sec. 803 (a), Revenue Act of 1932.]

*Executor*, 36 B. T. A. 633. We hold, therefore, that the value of the 1932 trust at the date of decedent's death, $38,051.38, is properly included in the gross estate of decedent and respondent is sustained.

Turning now to the 1929 trust, it is clear that the amendments to section 302 (c) effected by the Joint Resolution of March 3, 1931, and section 802 (a) of the Revenue Act of 1932 are not applicable to the 1929 trust with respect to decedent's right to receive the income of that trust for life. The Supreme Court has held in *Hassett* v. *Welch*, 303 U. S. 303, that these amendments "are prospective in their operation and do not impose a tax in respect of past irrevocable transfers with reservation of a life interest."

To include the 1929 trust in the decedent's gross estate under section 302 of the Revenue Act of 1926 [2] it is necessary to find that (1) the transfers were made in contemplation of death, or, (2) that they were intended to take effect in possession or enjoyment at or after death, or (3) that the decedent had an interest in the corpus of the trust at the date of death. Respondent urges that all of the above propositions be found to exist. It is one of the chief contentions of respondent that decedent reserved the right to withdraw the principal of the 1929 trust in excess of 50 percent of the original amount of the properties placed in trust by making request to the trustee to make payments out of principal for illness and emergency and any other unusual expenses. In other words, respondent contends that decedent could have revoked the entire trust. It is argued that there is an ambiguity in paragraphs 4 and 5 of the 1929 trust. This same question has been considered by the Court of Appeals of the State of New York in, *In the Matter of the Appraisal of the Estate of Lisa W. Sandford, Deceased*, 14 N. E. (2d) 374. In this opinion the Court of Appeals stated as follows:

> If an ambiguity arises by reason of an apparent conflict between paragraph 4 and paragraph 5 of the agreement of December 31, 1929, the practical construction given to that instrument by the parties during the years 1930 and 1931 up to July 12, 1932, would be quite persuasive in ascertaining intent. The trust of December 31, 1929, may, therefore, be interpreted as irrevocable up to fifty per cent of the corpus.

The New York Court of Appeals held the trust irrevocable up to 50 percent of the trust corpus in an appeal by the New York Tax Commission.

---

[2] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of *or intended to take effect in possession or enjoyment at or after his death,* except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \* [Italics supplied.]

We are of the same opinion and independently we conclude that by the terms of the trust the grantor's (decedent's) reserved power to withdraw from the corpus was limited to the right to withdraw only 50 percent thereof. Paragraph 4 states plainly that "the aggregate of such withdrawals shall not *at any time* exceed fifty per cent (50%) of the total of the original amount of securities and properties placed in trust." (Italics ours.) This restriction applies to paragraph 5 which is a provision for withdrawals for the grantor's own uses upon which paragraph 4, in its generality, was silent. The words in italics above, "at any time", are determinative. They cover times of "illness" and "unusual expenses" and provide the support for our conclusion as to the limitation.

In 1932 decedent withdrew securities from the 1929 trust to achieve a more satisfactory handling of her investments. The parties have stipulated that this was "the immediate purpose and one of the objectives in revoking the trust of 1929 to the extent of fifty per cent." It is stated as a preamble to the 1932 trust, executed by decedent: "Whereas, the said Lisa Winchester Sandford had the power under the said trust agreement [1929 trust] to withdraw *up to* fifty (50%) per cent of the original amount of securities and properties placed in trust." (Italics ours.) If the trustee of the 1929 trust had been called upon to make withdrawals from the 1929 trust corpus in excess of 50 percent for "other unusual expenses" under paragraph 5, the above statement, executed by decedent, removed all possible doubt as to the limitation existing in paragraph 4 of the 1929 trust.

We therefore hold that decedent made an irrevocable, inter vivos transfer in 1929 of the property comprising the corpus of the trust to the extent of the 50 percent here under consideration and she had no power to revoke what remained. It follows that in 1929 Baronig Baron received a vested remainder interest in the corpus of the trust subject to being divested of 50 percent. *In re Barstow's Estate*, 230 App. Div. 371; sec. 40, New York Real Property Law (McKinney, vol. 49); *Elizabeth B. Wallace, Executrix*, 27 B. T. A. 902; *William B. Armstrong*, 32 B. T. A. 1261. This transfer was complete when made and was not one intended to take effect in possession or enjoyment at death and is not testamentary in character merely because of the reservation of the life estate. Since the transfers were irrevocable and complete in 1929, decedent did not have an interest in the corpus of the 1929 trust at her death. In these respects the 1929 trust comes within the provisions of *Nichols* v. *Coolidge*, 274 U. S. 531; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner*, 281 U. S. 239; *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnet*, 283 U. S. 783; *McCormick* v. *Burnet*, 283 U. S.

784; *Coolidge* v. *Long*, 282 U. S. 582; *Bullard* v. *Commissioner*, 90 Fed. (2d) 144, and is not includable in decedent's gross estate.

There remains for our consideration the determination of the respondent that the transfers to the 1929 trust were made in contemplation of death. This contention is difficult in view of the stipulation of the parties that the decedent at the time she executed the 1929 trust was not contemplating imminent death nor was she then apprehensive of dying within the immediate or near future. Respondent points to the fact that the entire property conveyed originally to the 1929 trust, having a value of about $122,000, represented a substantial amount, if not nearly all of decedent's estate. The transfers to the 1929 trust were made within five years of the death of decedent. These are the only circumstances remaining upon which respondent's contention is based. Circumstances pointing to the conclusion that the transfers were not made in contemplation of death are that decedent was in apparent good health, was not contemplating imminent death, and was not apprehensive of dying within the near future when she executed the 1929 trust. Decedent did not execute her last will and testament until three years later, on June 30, 1932. Cf. *Updike* v. *Commissioner*, 88 Fed. (2d) 807. One of the purposes in creating the 1929 trust was to facilitate the buying and selling of securities for the decedent through her agent, Walter C. Baker, assistant trust officer of the Guaranty Trust Co. One of the stated purposes of executing the 1932 trust was to effect a more satisfactory handling of decedent's investments, decedent having been dissatisfied with the manner in which her investments were being handled by Baker, which had resulted in substantial losses. The phrase "in contemplation of death" has been carefully considered by the courts. *United States* v. *Wells*, 283 U. S. 102. Briefly, the test of whether or not the transfer was made in contemplation of death is always to be found in the transferor's motive and the circumstances must show that death was the motivating cause of the transfer. We do not find from the circumstances in this case that death was the motivating cause of decedent's transfers to the 1929 trust. The facts that decedent was in apparent good health, did not execute a will at the time, and desired to provide a means for the management and making of investments, all militate against a presumption that the 1929 transfers were in contemplation of death. We do not find facts to show that there was a condition of mind or body which would naturally prompt the settlor to make a disposition of her property to the natural objects of her bounty. On the record before us we conclude and hold that the transfers to the 1929 trust were not made in contemplation of death. *Estate of Emma R. Morse*, 27 B. T. A. 1070; *Estate of Walter P. Sharp*, 33 B. T. A. 290; affd.,

91 Fed. (2d) 804; *Tait* v. *Safe Deposit & Trust Co. of Baltimore,* 74 Fed. (2d) 851; *United States* v. *Wells, supra; E. Pennington Pearson,* 36 B. T. A. 5; *Security First National Bank of Los Angeles, Executor, supra.* Respondent relies upon *Updike* v. *Commissioner, supra.* We do not think the decision of the court in that case is determinative of the issues here. The circumstances in that proceeding were materially different from the circumstances involved in this proceeding. Respondent also relies on *Commissioner* v. *Colorado National Bank of Denver,* 95 Fed. (2d) 160, but we find that there was substantial evidence in that case that the motives of the grantor of the trust were associated with death and we do not find substantial evidence of such motives in this proceeding.

For all of the reasons above stated, it must be concluded that respondent erred in including in decedent's gross estate the value of the corpus of the 1929 trust.

(2) *The Duryea Trusts.*—Ellen W. Duryea, sister of decedent, executed an inter vivos trust on June 2, 1923, and created a testamentary trust by the second codicil to her last will dated February 16, 1927. In each trust petitioners' decedent was given the trust income for life, with power to appoint by will the disposition of the corpus of the trust. Upon decedent's failure to exercise the powers of appointment, the corpus of the inter vivos trust was to go to the children of Lisa W. Sandford (Lisa W. Heighe and Robert H. Heighe), and the corpus of the testamentary trust was to go to Lisa W. Sandford's "heirs at law."

Ellen W. Duryea died December 23, 1927. The petitioners' decedent exercised both powers of appointment by codicil to her will dated September 1, 1933, whereby she bequeathed one-half of each trust fund to two persons, her daughter, Lisa W. Heighe, and her adopted son, Baronig Baron, both of whom survived her. The respondent has included in decedent's gross estate the values of the entirety of the two Duryea trusts.

Section 302 (f) of the Revenue Act of 1926 [3] requires that there be included in the gross estate of a decedent for Federal estate tax the

---

[3] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*       \*       \*       \*       \*       \*       \*

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after his death, or (3) by deed under which he has retained for his life or any period not ascertainable without reference to his death or for any period which does not in fact end before his death (A) the possession or enjoyment of, or the right to the income from, the property, or (B) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth; \*   \*   \*   [As amended by section 803 (b) of the Revenue Act of 1932.]

value of property *passing* under a *general power of appointment* exercised by the decedent by will. Petitioners' decedent had general powers of appointment under the will of her sister and exercised the powers of appointment in the following way: She appointed as a beneficiary her daughter, who was one of her "heirs at law"; she appointed as the other beneficiary her adopted son, who was not an "heir at law" under New York law. If decedent had failed to exercise the powers of appointment, then, under the terms of the will of Ellen Duryea the corpora of the trusts would have passed to Lisa W. Heighe and Robert H. Heighe, the children of Lisa W. Sandford, and Baronig Baron, an adopted son, would not have been a beneficiary. See Domestic Relations Law of New York, sec. 114. In other words, Baronig Baron was a stranger who would not have taken property under the will of Ellen Duryea except by appointment by petitioners' decedent in exercise of her powers of appointment. It is clear, therefore, that one-half of each of the Duryea trusts passed to Baronig Baron under exercise of the general powers of appointment by petitioners' decedent and these transfers come within the provisions of section 302 (f) of the Revenue Act of 1926. Baronig Baron's interest in the corpora of the two trusts depended upon and sprang from the will of petitioners' decedent. Cf. *In re Delano's Estate*, 176 N. Y. 486; 68 N. E. 871. We hold that one-half of each of the Duryea trusts is properly included in the gross estate of petitioners' decedent.

Petitioners' counsel devoted a great part of their brief to the argument that none of the property in the Duryea trusts is includable in decedent's estate because of their contention that all estate taxes were, by Ellen Duryea, directed to be paid from her residuary estate by paragraph nine of her will, and that Ellen Duryea intended that her residuary estate should be subject to a tax applicable to the estate of the donee of the powers of appointment. This argument is without merit in this proceeding. It goes to the matter of the manner of payment of the petitioners' decedent's estate taxes. The Federal estate tax liability involved in this proceeding attaches to the estate of petitioners' decedent and determination of that tax liability is not affected by any provisions that may or may not have been made by Ellen Duryea in her will to pay petitioners' decedent's estate taxes.

There remains the question of whether the shares of the Duryea trusts that Lisa W. Heighe received should be included in decedent's estate. Decedent exercised the powers of appointment and respondent contends that by virtue of the exercise of the powers of appointment property passed under the powers to Lisa Heighe and her shares in the trusts should be included in decedent's estate under section 302 (f).

The Supreme Court has considered a question similar to that involved here in *Helvering* v. *Grinnell*, 294 U. S. 153. The Court has construed the meaning of section 302 (f) and has approved the reasoning of the New York Court of Appeals on principles which go to the essence of the applicability of section 302 (f). It is necessary to consider first the applicability of the rule set forth in the *Grinnell* case to the question involved here.

In *Helvering* v. *Grinnell*, *supra*, the facts were similar to the facts in this proceeding except that in the *Grinnell* case the persons named as beneficiaries under exercise of a power of appointment renounced in writing their right to receive property under the appointment and elected to take the property under the will of the donor of the power. Analysis of the situation in the *Grinnell* case shows that the appointees had vested remainder interests in the property involved under the will of their father, the donor of the power. It is clear that the appointees had "a distinct and separate title" in the property in question and elected to take the property under that title. It is also clear that the appointees, who were remaindermen under the donor's will, had a perfect title without the appointment under which they would have received the same property in the same amount if the general power of appointment had not been exercised. The exercise of the power did not complete or consummate their title. The expiration of the intermediate life estate was the event that ripened the vested interest into a right to possession of the property.

In the *Grinnell* case, it was the contention of the Government:

\* \* \* that the tax (under section 302 (f) of the Revenue Act of 1926) is imposed upon the power to transmit or the transmission of property by death; the shifting of the economic benefits in property is the real subject of the tax.

The Government argued that the property in question passed to the sisters under the general power of appointment exercised by the decedent by will within the meaning of the statute.

The Court did not agree and stated:

\* \* \* The tax here does not fall upon the mere shifting of the economic benefit in property, but upon the shifting of those benefits by a particular method, namely, by their *"passing"* under a general power of appointment", and not otherwise. Acceptance of the Government's contention would strip the italicized word of all meaning.

Passing to the question whether the property involved had *passed* by the "particular method", i. e., under a general power of appointment, the Court held that the property did not pass under the power and pointed out that the power might have been exercised so as to have left the appointee no title at all; but that the power was exercised so as to leave the beneficiaries the same title they had without the exercise of the power. In so holding, the Court approved the

reasoning of the New York Court of Appeals in the *Matter of Lansing's Estate*, 182 N. Y. 238; 74 N. E. 882, and quoted a paragraph from the opinion in *Lansing's Estate*, which we quote here:

Her rights were fixed by the will of her grandfather, and, unless changed pursuant to its provisions, her estate in expectancy would become an estate in possession upon the death of her mother. * * * Although the power was exercised in form, her title was perfect without it, and she derived no benefit from it. The power was to "dispose of the remainder", and the remainder was not disposed of, but continued where it was. The attempt to execute the power was not effective, because it did nothing. The exercise of a power which leaves everything as it was before is a mere form, with no substance.

This Board has previously held that property subject to a general power of appointment should be included in gross estate under section 302 (f) where the power is exercised and where the appointees, under local law, had a vested remainder interest in the property and would receive it under the will of the donor of the power. See *Mary M. Lee*, 18 B. T. A. 251; affd., 57 Fed. (2d) 399; certiorari denied, 286 U. S. 563; *Joseph Walker Wear et al., Executors*, 26 B. T. A. 682; affd., 65 Fed. (2d) 655. The court in the *Wear* case stated that "the tax is not upon the property of the power but is upon *the exercise of the power itself*." (Italics ours.) The Supreme Court has overruled the *Wear* and *Lee* cases in the *Grinnell* case where it stated that:

* * * The reasoning of those courts and of the court below (N. Y. Court of Appeals) cannot be reconciled. We are of the opinion that to the extent of the conflict, the view of the former is wrong and that the court below is right and we hold accordingly.

We understand the rule now expressed by the Supreme Court to be that property is not to be included in a decedent's estate under section 302 (f) unless the exercise of a general power of appointment effectuates the passing of the property and consummates the *passing* of title.

We are concerned with what we perceive to be the only difference between this case and the *Grinnell* case, namely, the matter of what is termed election. Lisa Heighe did nothing in this respect, i. e., she did not renounce the right to receive under the appointment and elect to take under the will of the donor. The Supreme Court did not have to consider the materiality of "election" except where it had been made so as to reject or refuse the taking of property under appointment. However, we come to the conclusion that "election" is not material and that the rule of the *Grinnell* case is to be applied by a disregard of what is termed an "election" where the beneficiary-appointee is given the same interest in property (or less) under the power as he has as a vested remainderman under the will of the donor of the power. What has been termed "an election" is a formal matter.

As we see it, where a person has a vested remainder interest under the will of the donor of the power of appointment subject only to being divested by exercise of the power, and where the general power is exercised so as to leave the appointee's rights just as they were before (the same or less), then it adds nothing to the property rights vested under the will of the donor of the power for the remainderman to make a formal declaration that he takes under the will of the donor of the power. If he takes under the will of the donor he does so because of property law without express election to so take. It may be said that his title is perfect without his formally saying so. It is a different matter to refuse a devise. An "election" is a method of avoiding title against one's will and is recognized as an effective method of refusing to take title. We conclude that the reasoning approved in the *Grinnell* case applies here where there was no "election." Cf. *Matter of Chauncey*, 102 Misc. 378; 168 N. Y. S. 1019, and *In the Matter of the Appraisal of the Estate of Ellen Duryea*, 14 N. E. (2d) 369. We are unable to find any evidence in the *Lee* and *Wear* cases that there was an "election" under the situations there involved and the matter is not discussed by the courts.

We turn now to the particular facts relating to Lisa Heighe's property interests involved in this proceeding. We understand the rule of the *Grinnell* case to require consideration of the property laws of the state where property transfers take place. Lisa Heighe had a vested remainder future estate in the Duryea trusts under the will of Ellen Duryea and the existence of the unexecuted power of appointment did not prevent the vesting of the future estate. See section 41, Real Property Law of New York (McKinney, vol. 49). Cf. *William Korn et al., Executors*, 35 B. T. A. 1071; *Lansing's Estate, supra; Chauncey's Estate, supra.* The facts show that if the power of appointment had not been exercised one-half of the trusts would have gone to Lisa Heighe and one-half to Robert Heighe under the will of the donor of the power, Ellen Duryea. Under the rule of the *Grinnell* case, as applied to this particular proceeding, the shares in the Duryea trusts taken by Lisa Heighe did not pass to her under the exercise of the power if the exercise of the power left everything as it was before, i. e., if she received no more under the power than under the will of the donor of the power. Just what Lisa Heighe received under the power has been determined by the New York Court of Appeals in the *Estate of Ellen Duryea, supra.* The court in that case had before it as appellants both Robert H. Heighe and the New York Tax Commission. Robert Heighe was a remainderman whose remainder interest was divested by exercise of the power. The court was adjudicating a matter relating to the right to taxes. The situation was peculiar. The court considered

the property interests involved carefully. The appellants contended that Lisa Heighe took more under the power of appointment than she would have taken by an election to take under the will of Ellen Duryea. The court stated one of the questions to be "whether the transfer in each instance is one properly held taxable to the estate of the donee under *established principles of law*." (Italics ours.) We regard the conclusion of the New York Court of Appeals as determinative of property rights "under established principles of law" and as controlling here on the point of whether Lisa Heighe received the same property rights under the power as under the will of the donor of the power. Cf. *Freuler* v. *Helvering*, 291 U. S. 35. The New York Court of Appeals held as follows:

* * * It must therefore be held that Lisa W. Heighe takes no more under the appointment than she would have taken had no appointment been made.

The court stated in support of its holding, as follows:

* * * The donee of the power might have said, "I give to Lisa W. Heighe the share which she would have taken under the will of Ellen W. Duryea and to Baronig Baron the share which Robert H. Heighe would have taken." That would have been a good appointment, would have precluded Robert H. Heighe from taking a share in the trust estate under the Duryea will and would have given to Lisa W. Heighe exactly what she would have taken under the Duryea will had no appointment been made. While the donee of the power did not mention the fact that such was the disposition she was making of the fund, it is entirely clear that such was the intent and effect of the appointment made. * * *

In other words, Lisa Heighe would have taken one-half of the trusts under the will of the donor of the power if the power had not been exercised and the New York Court of Appeals has held that it is clear that the intent and effect of the appointment made by decedent was to give Lisa Heighe the same share she would have taken under the will of the donor of the power. As stated above, we regard this as settling a question of property rights and this construction is controlling here.

We conclude, therefore, that no property *passed* to Lisa Heighe when decedent exercised the power of appointment because the exercise of the power left her property rights just as they were before. Under the rule of *Helvering* v. *Grinnell*, *supra*, there was no *passing* of property upon which the tax provided for under section 302 (f) can attach. We hold that the shares of Lisa Heighe in the corpora of the Duryea trusts are not includable in decedent's gross estate.

(3) *The Winchester Trust.*—In the pleadings, petitioners allege that respondent erred in including in decedent's estate the value of the corpus of the Winchester trust because at the date of Thomas B. Winchester's death in 1904 there was no Federal estate tax. Thomas B. Winchester, by his will and codicils thereto, bequeathed

the corpus of the trust established for Lisa W. Sandford to her "then living issue" in default of her exercise of the power of appointment over the trust corpus he gave her. Decedent exercised the power of appointment by directing that the principal of the trust be used for the payment of twelve legacies, aggregating $16,500, to named legatees, and that, in so far as possible, administration and funeral expenses, as well as expenses in connection with the erection of a tomb at a cost not to exceed $15,000 be paid out of the principal of said trust and that any *residue* of said trust be divided equally between Lisa Heighe and Baronig Baron.

Lisa Heighe was in being before the power of appointment was exercised. Under the laws of Massachusetts, Lisa Heighe took a vested remainder interest in the corpus of the trust created under the will and codicil thereto of Thomas B. Winchester defeasible on a condition subsequent, i. e., the exercise of the power of appointment. *Blanchard* v. *Blanchard*, 1 Allen, 227; *Moore* v. *Lyons*, 25 Wend. 119; *Ray* v. *Enslin*, 2 Mass. 554; *Welch* v. *Stevens* (Mass.), 104 N. E. 726. Cf. *Emmons* v. *Shaw*, 171 Mass. 410; 50 N. E. 1033; *Doe* v. *Considine*, 73 U. S. 458; *Coolidge* v. *Long*, 282 U. S. 582; *Saltonstall* v. *Saltonstall*, 276 U. S. 260. Although it appears doubtful, under the facts, whether there will be any residue in this trust for Lisa Heighe to take, whatever she does take will be part of her vested remainder interest under the will of Thomas Winchester, the donor of the power. Upon the same reasoning set forth above relating to the Duryea trusts under the apparent rule of *Helvering* v. *Grinnell*, *supra*, the exercise of the power by the decedent did not consummate the property rights of Lisa Heighe because they had already vested in her under the will. We hold, accordingly, that the share of the Winchester trust received by Lisa Heighe did not pass to her under the power and therefore it is not includable in decedent's estate under section 302 (f).

As for the rest of the transfers of the Winchester trust to strangers, including Baronig Baron, and to decedent's executors for stated uses, we conclude that such shares of the corpus of the trust are properly included in decedent's estate because all these gifts passed under a general power of appointment. We arrive at this conclusion even though the power of appointment was created prior to the enactment of the Federal estate tax legislation. Thomas Winchester, in 1904, left the property in question subject to the power. The transfers to these beneficiaries were incomplete as to Winchester. The appointment by decedent made the transfers complete. The exercise of the power of appointment after the effective date of the pertinent Federal estate tax law requires that the value of the part of the trust corpus so passing be included in decedent's gross estate. We so hold. *Edward J. Hancy, Executor*, 17 B. T. A. 464; *Chanler* v. *Kelsey*,

205 U. S. 466; *Saltonstall* v. *Saltonstall, supra.* Cases cited by petitioners, including *Coolidge* v. *Long, supra; Nichols* v. *Coolidge, supra; May* v. *Heiner, supra; Burnet* v. *Northern Trust Co., supra; United States* v. *Field,* 255 U. S. 257, may be distinguished upon their facts and upon differences in the status of the Federal estate tax law now and at earlier dates.

(4) *Expenses of the Estate.*—In determining the deficiency here in question, the respondent allowed only $1,614.50 as a deduction on account of funeral expenses. On the basis of the facts stipulated, the estate is entitled to a total deduction of $6,221.50. We hold accordingly.

Reviewed by the Board.

*Decision will be entered under Rule 50.*