HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* GRINNELL, EXECUTOR.

No. 268.   Argued January 16, 1935.—Decided February 4, 1935.

*Solicitor General Biggs,* with whom *Assistant Attorney General Wideman* and *Messrs. Sewall Key* and *John MacC. Hudson* were on the brief, for petitioner.

*Mr. Bernhard Knollenberg,* with whom *Messrs. Allen Evarts Foster* and *Harry J. Rudick* were on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

In 1876, John O. Stone died a resident of New York. He left a will by which he created for the benefit of his daughter, the decedent, Annie Stone, a trust fund, the income from which was to be paid to her during her life. The will provided that upon her death her share of the

estate should go and be applied to such persons and such uses as she might appoint by last will and testament; but in default of such appointment, her share of the estate should go and belong to her children or issue, respectively, by right of representation; or, in default of such issue, to her next of kin. Surviving John O. Stone, were his widow and three daughters—namely, this decedent, and Ellen J. Stone and Sarah J. Grinnell. These constituted his only heirs at law and next of kin. The widow died many years before the death of Annie Stone. Annie Stone, the decedent, died September 24, 1927, unmarried, without issue, and leaving as her sole next of kin her two sisters just named. Her will provided " that what property or money I am allowed to dispose of by will under the will of my dear father, the late Dr. John O. Stone, of the city of New York, I give, devise, and bequeath in equal shares to my dear sisters Ellen J. Stone and Sarah J. Grinnell, . . ." After the death of Annie Stone, the two sisters in writing renounced their right to receive the property under this paragraph of her will and elected to take the property under the provisions of the will of their father, John O. Stone.

The Commissioner of Internal Revenue declared a tax deficiency of several thousand dollars in the federal estate tax on the estate of Annie Stone, upon the theory that the property derived from the estate of her father was required to be included in her gross estate in virtue of the fact that she had exercised a power of appointment in respect thereof. The Board of Tax Appeals, on review, sustained the commissioner. The order of the Board of Tax Appeals based on this holding was reversed by the court of appeals, 70 F. (2d) 705, upon the ground that the property did not *pass* under the exercise of the power; and consequently, an essential condition of § 302 of the act of 1926 was not present.

Section 302, c. 27, 44 Stat. 9, 70, 71, provides:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

. . . . .

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth; . . ."

The crucial words are "property passing under a general power of appointment exercised by the decedent by will." Analysis of this clause discloses three distinct requisites—(1) the existence of a general power of appointment; (2) an exercise of that power by the decedent by will; and (3) the passing of the property in virtue of such exercise. Clearly, the general power existed and was exercised; and this is not disputed. But it is equally clear that no property passed under the power or as a result of its exercise since that result was definitely rejected by the beneficiaries. If they had wholly refused to take the property, it could not well be said that the property had passed under the power, for in that event it would not have passed at all. Can it properly be said that because the beneficiaries elected to take the property under a distinct and separate title, the property nevertheless passed under the power? Plainly enough, we think, the answer must be in the negative.

The contention of the government is that the tax is imposed "upon the power to transmit or the transmission of property by death; the shifting of the economic benefits in property is the real subject of the tax. . . . the

property in question passed to the sisters under the general power of appointment exercised by the decedent by will within the meaning of the statute." But this involves the obviously self-destructive conclusion that an unsuccessful attempt to effectuate a thing required by the statute is the same as its consummation. The tax here does not fall upon the mere shifting of the economic benefits in property, but upon the shifting of those benefits by a particular method—namely, by their "*passing* under a general power of appointment," and not otherwise. Acceptance of the government's contention would strip the italicized word of all meaning.

The government relies upon *Chase Nat. Bank* v. *United States,* 278 U. S. 327, and *Tyler* v. *United States,* 281 U. S. 497. In neither of these cases was the court concerned with the meaning of the act. In the first case (p. 334) the court said the tax was plainly imposed by the explicit language of the statute, and that there was no question as to its construction. The sole question for determination was as to the constitutional validity of the act. The same is true in respect of the second case. Neither case sheds any light upon the question here involved, namely, the meaning and application of the statutory provision.

The court below leaned confidently upon the decision of the New York Court of Appeals in the *Matter of Lansing,* 182 N. Y. 238; 74 N. E. 882. That well considered case and this in principle cannot be distinguished. We think the reasoning of the New York court as to the meaning and application of the state law equally applies to the federal statute here in question. There, as here, the contention of the taxing authorities (there under the state act, here under the federal act) was that the appointee named in the will of the donee of the power took her property thereunder and not under the will of the creator of the power, notwithstanding the property had been given to her by the will of the latter subject to the power

of appointment. But the state court answered that the power gave the appointee nothing and took nothing away from her; that she had the right of election and could refuse to take under the appointment and still hold the property, since her title without was as good as it was with the power; that she treated the exercise of the power as a mere attempt and not as an effective execution of it; and that it sufficiently appeared that she elected to reject title from that source.

"Her rights were fixed by the will of her grandfather, and unless changed pursuant to its provisions her estate in expectancy would become an estate in possession upon the death of her mother. . . . Although the power was exercised in form, her title was perfect without it and she derived no benefit from it. The power was to 'dispose of the remainder' and the remainder was not disposed of but continued where it was. The attempt to execute the power was not effective, because it did nothing. The exercise of a power which leaves everything as it was before is a mere form, with no substance." [pp. 243–244.] The opinion, p. 244, points out that the power might have been exercised so as to have left the appointee with no title at all; but that in fact it was exercised so as to leave her the same title that she would have had if the power had not been exercised. The same is true here.

"An appointee under a power," the court continued, "has the right of election, the same as a grantee under a deed. . . . He can accept the title tendered or reject it in his discretion. It cannot be forced upon him against his will. He cannot be compelled to receive additional evidence of title when he does not want it, and does not need it because his title is perfect without it. His consent is necessary before the attempt to exercise the power becomes binding upon him the same as consent is necessary in making a contract or agreement. Declining or refusing to take has the same effect as incapacity to take,

158

as in the case of a devise to a corporation which has no power to hold any more property because the statutory limit has been exceeded. The title is not affected, but remains where it was before." [p. 245.]

We granted the writ of certiorari in this case because of an alleged conflict with *Wear* v. *Commissioner*, 65 F. (2d) 665, and *Lee* v. *Commissioner*, 61 App. D. C. 33; 57 F. (2d) 399. The reasoning and conclusions of those courts and of the court below cannot be reconciled. We are of opinion that, to the extent of the conflict, the view of the former is wrong and that of the court below is right, and we hold accordingly.

*Judgment affirmed.*