## CENTRAL HANOVER BANK & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 66.

Circuit Court of Appeals, Second Circuit.

March 17, 1941.

Hall Hammond, of Baltimore, Md., and Leonard A. Blue and Larkin, Rathbone & Perry, all of New York City, for petitioner-executor.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., for the Commissioner.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The principal question raised by the appeal of Central Hanover Bank and Trust Company, as executor of the will of William H. Morgan, deceased, is whether remainder interests created by the will of his sister Laura Louise LaMontagne over which he was given a testamentary power of appointment under her will were properly included in his gross estate within the meaning of Section 302 (f) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 227.

In assessing estate taxes, Section 302 (f) provides that the value of the gross estate of a decedent shall be determined "by including. the value at the time of his death of all property,

\* \* \* \* \* \* \* \*

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, \* \* \*".

. Laura Louise LaMontagne, who died March 21, 1912, leaving four sons, bequeathed her estate to her brother William H. Morgan and the Central Hanover Bank and Trust Company in trust to divide it into as many equal parts as she left children her surviving, to invest each of such parts and to pay over the income derived therefrom to the use of the child for whom the share is set apart during his natural life, and immediately upon his death, she bequeathed the principal of his share to her brother William H. Morgan. If William H. Morgan should not be living at the time he would become entitled to receive any such principal, the testatrix bequeathed the same "to such person or persons, as he, my said brother may designate in and by any instrument in writing in the nature of a last Will."

The four sons of Laura Louise LaMontagne, who were her only heirs and next of kin, all survived William H. Morgan. At the time of his death on October 12, 1934, their ages were as follows: Montaigu 54; Rene M. 51; Morgan E. 49 and William A. 48. They were the persons entitled to share in any portion of her estate

of which she died intestate. When William H. Morgan died, the only son of his sister Laura who then had issue was Morgan E., who had two infant children, one born in September, 1922, and the other in February, 1927. None of her sons had any issue born after the date of the death of William H. Morgan and none of them has died since except Montaigu, who died without issue on January 19, 1938.

William A. Morgan left a will whereby he exercised the power of appointment as follows over the remainder interests in the four trusts which were granted to him by his sister's will: "Now Therefore, exercising the power given to me by said Will, upon the death of each of said sons, to wit: Montaigu LaMontagne, Rene M. LaMontagne, Morgan E. LaMontagne and William A. LaMontagne, I herewith designate his issue, him surviving, and if he should leave no such surviving issue, then his brothers who shall have survived him and/or the issue of any brother or brothers who shall have predeceased him, as the person or persons to receive and to have said Principal or Corpus share and share alike, but the issue of each predeceased brother to take share and share alike, per stirpes and not per capita, the share to which the predeceased parent would have been entitled had such parent survived him; and in the event of the death of the last survivor without leaving him surviving any issue of any of said sons, then, in such event, I hereby designate The Metropolitan Museum of Art in the City of New York, * * * to receive and to have the same."

In March, 1936, each of the sons of Laura Louise LaMontagne executed and delivered to Central Hanover Bank and Trust Company, the surviving trustee under her will, a separate instrument wherein he renounced and disclaimed all right to take any interest in remainder in any trust created by her will which might be appointed to him by the will of William H. Morgan in the exercise of the power of appointment granted by her will.

In determining the gross estate of William H. Morgan the Commissioner included the value of the remainder interests in the trusts appointed by the will of William H. Morgan. The Board of Tax Appeals affirmed the Commissioner and assessed the estate tax accordingly. The taxpayer contends that because of the renunciations by the four sons of Laura Louise LaMontagne the remainder interests in the principal of the respective trusts did not pass through the exercise of the power of appointment and therefore were not to be reckoned as part of the gross estate of William H. Morgan. We think that the remainder interests did not wholly pass under his will and that the proceeding must be remanded to the Board for a recomputation of the estate tax.

If we should assume that the life beneficiaries would die in the order of their respective ages, and that the issue of Morgan E. LaMontagne who were living at the date of the death of the donee of the power would remain the only issue of any of the equitable life tenants, and if we should also assume that the several renunciations were valid, one-half of the total capital of the trusts would pass by intestacy and one-half by virtue of the exercise of the power. Upon such an assumption the following devolutions would result:

On the death of Montaigu without issue the principal of the trust held for his life amounting to $\frac{1}{4}$ of his mother's estate would pass, as property undisposed of by her will, $\frac{1}{4}$ thereof to Montaigu's estate, $\frac{1}{4}$ thereof to Rene M., $\frac{1}{4}$ thereof to Morgan E., and $\frac{1}{4}$ thereof to William A. Upon the death of Rene M. without issue the principal of the trust held for his life would similarly pass: $\frac{1}{4}$ to Montaigu's estate, $\frac{1}{4}$ to Rene's estate, $\frac{1}{4}$ to Morgan E., and $\frac{1}{4}$ to William A. Up to this point $2/16$ of the capital of the four trusts would have passed by intestacy to the estate of Montaigu, $2/16$ thereof to Rene, or his estate, $2/16$ to Morgan E., and $2/16$ to William A. There would thus be $8/16$ or $\frac{1}{2}$ of the aggregate of the four trust estates which would not pass through the exercise of the power and therefore would not be includible in the gross estate of the donee of the power. On the death of Morgan E. LaMontagne the capital of the trust for his life use comprising $\frac{1}{4}$ of his mother's estate would pass to his issue, who never renounced any rights, under the will of the donee. Upon the death of William A., the capital of his trust, which likewise comprised $\frac{1}{4}$ of his mother's estate, would pass to the issue of Morgan E. under the will of such donee. Because, under the assumptions we have made, the capital of these last two trusts would pass under the will of the donee of the power it would be includible in the gross estate of the donee for the purpose of computing his estate tax.

■ In view of the ages of the life beneficiaries of the four trusts, and of those of the children of the only life beneficiary who had issue living at the time of the death of the donee of the power, it may not be unreasonable to suppose that only the value of the remainder interests in the trusts for Morgan E. and William A. should be included in the gross estate of William A. Morgan as property passing under the power. But whether this be so or not, it seems evident from the illustration we have given that a part of the trusts cannot be regarded as thus passing. How much passed must be determined by the trier of facts after hearing the testimony of an actuary or other expert and weighing the contingencies which may affect the value of the property passing. This conclusion seems in accord with the rule adopted in Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825; In re Lansing's Estate, 182 N.Y. 238, 74 N.E. 882; Legg's Estate v. Commissioner, 4 Cir., 114 F.2d 760, and Rothensies v. Fidelity-Philadelphia Trust Co., 3 Cir., 112 F.2d 758. In the above decisions of the Third and Fourth Circuits it was held that the entire property, subject to appointment, is not to be regarded as passing by the power, if the share of a particular appointee would have passed to him irrespective of the exercise of the power.

■■ It is clear that the renunciations, while preventing the transmission of property to any of the sons, through the operation of the power, would not prevent the transmission of such portions of the estate as would come directly from their mother and were not disposed of by her will. That the sons by renouncing their right to take under the power could elect to take directly from their mother is settled under the law of the State of New York in which the trusts were created. Albany Hospital v. Albany Guardian Society, 214 N.Y. 435, 108 N.E. 812, Ann.Cas. 1916D, 1195; Oliver v. Wells, 254 N.Y. 451, 173 N.E. 676; Matter of Lathers' Estate, 167 Misc. 186, 3 N.Y.S.2d 732; Matter of Johnston's Estate, 164 Misc. 469, 298 N.Y.S. 957. The case at bar is not one where an appointee is attempting to acquire something under a power and also seeking to avoid inheritance taxes by renouncing the power to the extent that he would receive a part of the property embraced in its terms under the will of the donor or by intestacy. Matter of Taylor's Estate, 209 App.Div. 299, 204 N.Y.S. 367,

affirmed 239 N.Y. 582, 147 N.E. 204; Matter of Vanderbilt's Estate, 281 N.Y. 297, 22 N.E.2d 379. Here the renunciations were complete and embraced everything passing to any of the sons under the power.

That a portion of the remainder interests would not pass through the exercise of the power seems certain in the light of the record before us and of the single assumption we have made. The question is to what extent, in view of the various contingencies which might occur, and of the renunciations, the property attempted to be disposed of through the exercise of the power would pass thereunder. This is a question of fact for the Board to determine, taking the situation as it existed at the date of the death of the donee and as affected by the renunciations which would relate back to that time. Only to the extent that the property would pass under the power is it to be included in the estate of the donee for purposes of taxation. A valuation of the amount so passing cannot be made without further evidence in view of the possibilities of deaths of the sons of the donor in an order different from that which we have hypothetically assumed. Such a valuation as of the date of the donee's death must be determined by estimating it as nearly as possible with the aid of the testimony we have suggested.

■ The last contention on the part of the taxpayer is that there should be a deduction of estimated trustees' commissions payable on the future distribution of the trust property at the termination of the respective trusts. The Board refused to allow a deduction for unearned trustees' commissions in valuing the remainder interests. We think such a conclusion was right as we have already intimated in Adriance v. Higgins, 2 Cir., 113 F.2d 1013, 1017. How far commissions computable upon the value of the property finally passing, which value may then be much more or much less than at the date of the death of the donee, will diminish the value of the property passing under the will of the donee, is too problematical to justify a deduction of their present worth. Cf. Bretzfelder v. Commissioner, 2 Cir., 86 F.2d 713; City Bank Farmers Trust Co. v. Commissioner, 2 Cir., 112 F.2d 457.

The order of the Board is reversed and the cause is remanded, with directions to proceed in accordance with the views expressed in this opinion.