COMMISSIONER OF INTERNAL REVENUE v. ROGERS' ESTATE et al.

No. 170.

Circuit Court of Appeals, Second Circuit.

April 2, 1943.

Writ of Certiorari Granted June 21, 1943.

See —— U.S. ——, 63 S.Ct. 1446, 87 L.Ed. ——.

36

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, Arthur A. Armstrong, and N. Barr Miller, Sp. Assts. to Atty. Gen., for petitioner.

John W. Drye, Jr., Harold A. Donegan, and Arthur W. Siegrist, all of New York City, for respondents.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This court disagrees with the Tax Court and agrees with the Commissioner. However, the several members of this court arrive at that conclusion by different paths. I shall, therefore, describe only my own path.

The taxpayer, purporting to rely on Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, contends that, if there had been an exact equivalence between the interests appointed to the widow and daughter and the interests which those beneficiaries respectively would have received if the power had not been exercised, then those appointed interests would not be included in decedent's estate under § 302(f), and that this is an a fortiori case, since the interests appointed to the widow and daughter are less in value than the interests which each of them would have received if the power had remained wholly unexercised. I think that the taxpayer has misinterpreted Helvering v. Grinnell. There, although there was an exact equivalence, the court held, I think, that there was no tax solely because the beneficiaries had renounced the appointments. In other words, I interpret that case as holding that, absent renunciations, there would have been a tax despite the existence of an exact equivalence.

The taxpayer, citing Rothensies v. Fidelity-Philadelphia Trust Company, 3 Cir., 112 F.2d 758, and Legg's Estate v. Commissioner, 4 Cir., 114 F.2d 760, argues thus: In the Grinnell case, the court indicated that the "reasoning and conclusions" of the courts in Wear v. Commissioner, 3 Cir., 65 F.2d 665, and Lee v. Commissioner, 61 App.D.C. 33, 57 F.2d 399, were inconsistent with its own conclusion; in each of those cases, there was (a) an exercise of the power and (b) exact equivalence but (c) there was no renunciation; consequently (says taxpayer) there could have been no inconsistency with Grinnell if the Supreme Court, in Grinnell, had regarded renunciation as in any way a relevant fact; wherefore, it is urged, the

pivotal fact in Grinnell was the equivalence.

That argument seems to me to be untenable. It seems clear that the reference to "inconsistency" in the Grinnell case is explicable thus: (a) In Wear and Lee, the courts had reasoned that the interests passed to the beneficiaries by virtue of the exercise of the power, solely because the donee of the power, by designating a stranger, could have divested the beneficiaries of the interests which they would have received in default of any appointment, with the consequence that the exercise of the power extinguished this possibility of divestiture. Thus in the Wear case, the court said (65 F.2d 665, at page 667): "The generating source of the change was the death of the donee without action adverse to them. That too was the generating source of the tax." In the Lee case, the court said (57 F.2d at page 402); "It is argued that the tax should not apply to that transfer, inasmuch as without it the moiety would nevertheless have become the property of George Bolling Lee as devisee under his father's will. This view cannot be sustained. It is true that, if Robert E. Lee at the time of his decease had entirely omitted to exercise the power of which he was the donee, his brother, George Bolling Lee, would have held the moiety of the former by devise under the will of W. H. F. Lee. But, on the other hand, *Robert E. Lee was entitled during his lifetime to appoint the moiety to any other person, and thus defeat the devise to George Bolling Lee.* Therefore the exercise of this power by Robert E. Lee at least confirmed the title of his brother to the moiety in question." [1]  (b) Had that reasoning been sound, renunciation of the appointments and election to take under the donor's will would not have avoided a tax; for the alleged effect of the exercise of the power—by way of extinguishing the possibility of divestiture—would still have been operative despite that renunciation and election. (c) There was, accordingly, a plain inconsistency between the "reasoning" of Wear and Lee and what I understand to be the Supreme Court's ruling in Grinnell, i. e., that it was solely the renunciation which avoided tax.[2]  (d) There was a still further inconsistency. As suggested by the opinion of the lower court in Grinnell,[3] the reasoning of the courts in Wear and Lee logically compelled the conclusion that Congress intended to include in § 302(f) as "property passing under a general power of appointment *exercised* by the decedent," property which passed when he did not exercise the power; for the non-exercise—as well as the exercise in favor of the beneficiaries in default—would effectuate an extinguishment of the possibility of divestiture, and such an extinguishment accomplished a "passing" under the power according to Wear and Lee. But in Grinnell it was the "conclusion" of the Supreme Court that § 302(f) did not operate unless there was an "exercise of that power." (See 294 U. S. at page 155, 55 S.Ct. 354, 355, 79 L.Ed. 825.)

In support of the view that renunciation was not the key factor in Grinnell, much is made of the fact that in that case the Supreme Court cited and quoted from Matter of Lansing's Estate, 182 N.Y. 238, 74 N.E. 882, 884, referring to it as "that well-considered case" and saying that "in principle" it "cannot be distinguished." But in the Lansing case, the New York court had stressed the fact that the appointee had "elected" to take under the will of the donor, her grandfather, and not under the power of appointment exercised by her mother, the donee of the power. The court said: "There is no evidence in the record that she ever accepted the appointment or claimed title through the exercise of the power, but, on the other hand, it sufficiently appears that she elected to reject title from that source. An appointee under a power has the right of election, the same as a grantee under a deed. 'It is essential to the legal operation of a deed that the grantee assents to receive it. It cannot be imposed upon him, and there can be no delivery without an acceptance.' Jackson v. Dunlap, 1 Johns. Cas. 114, 116, 1 Am.Dec. 100; Jackson v. Phipps, 12 Johns. 418. He can accept the title tendered or reject it, in his discretion. It cannot be forced upon him against his

---

[1] Emphasis added.

[2] In so far as the Rothensies and Legg cases, supra, reach a different conclusion, I think they are in error.

[3] Grinnell v. Commissioner, 2 Cir., 70 F.2d 705. There it was said of the opinion in the Wear case (70 F.2d page 708):

"Such reasoning would require the imposition of a tax under the act even though Annie Stone [the donee of the power] had died intestate, though the statute furnishes no warrant for taxation under such circumstances."

will. He cannot be compelled to receive additional evidence of title when he does not want it, and does not need it because his title is perfect without it. His consent is necessary before the attempt to exercise the power becomes binding upon him the same as consent is necessary in making a contract or agreement. Declining or refusing to take has the same effect as incapacity to take, as in the case of a devise to a corporation which has no power to hold any more property because the statutory limit has been exceeded. The title is not affected, but remains where it was before." The Supreme Court, in Grinnell (294 U.S. at page 157, 55 S.Ct. at page 355, 79 L.Ed. 825), when referring to Lansing, noted that the state court had said "that it sufficiently appeared that she elected to reject title" through the power, and quoted from the Lansing opinion the discussion concerning "election" and "declining or refusing to take."

Notwithstanding the foregoing, I might hesitate to interpret Grinnell as I have done, because of a seemingly contrary interpretation by this court in Central Hanover Bank & Trust Company v. Commissioner, 2 Cir., 118 F.2d 270, 273, were it not for the subsequent decision in Helvering v. Safe Deposit Company, 316 U.S. 56, 62 S.Ct. 925, 930, 86 L.Ed. 1266, 139 A.L.R. 1513. There relatives of a decedent asserted a claim as appointees under his will or, in the alternative, as his heirs by intestacy. The claim was compromised and the question was whether there was any tax under § 302(f) because of the appointment. The Supreme Court held that there was such a tax and remanded the case to the Tax Board to determine how much of the property should be deemed to have passed under the appointment (with the consequence that it was taxable) and how much by intestacy (with the consequence that it was not taxable). In the course of the court's opinion, it discussed a contention that the "taxable event" occurred upon the death of the decedent and that a tax could not be based upon the compromise since it occurred after that event. Answering that contention, the court said: "Whatever may be the general rule in this respect, this Court has clearly recognized, in Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, that events subsequent to the decedent's death, *events controlled by his bene-* fiduciaries, can determine the inclusion or not of certain assets within the decedent's gross estate under Section 302(f). In that case the decedent had exercised a general testamentary power of appointment, an act which, under Section 302(f), brings the property subject to the power within the gross estate. *The subsequent renunciation by the appointees* of the right to receive by appointment *and their election to take as remaindermen in default of appointment were held by this Court to place the property subject to the power outside the scope of Section 302(f)."* [4] This comment is meaningless unless the court regarded the renunciation as the significant factor in Grinnell. The minority opinion in the Safe Deposit case similarly interprets Grinnell, saying (316 U.S. at page 68, 62 S.Ct. at page 931, 86 L.Ed. 1266, 139 A.L.R. 1513): "In Helvering v. Grinnell, supra, the decedent exercised the power but *the appointees,* as was their right under state law, *elected not to take under the appointment* but to take as remaindermen directly from the estate of the creator of the power, and it was held that § 302 * * * could not be invoked to impose a tax upon the estate of the decedent." [4]

Accordingly, I think that the Tax Court here was wrong, and that, as there were no renunciations, all the appointed interests must be included in decedent's estate under § 302(f).

The decision of the Tax Court is reversed.

L. HAND, Circuit Judge (concurring).

The donor in the case at bar made the gift in default conditional upon the failure of the donee to exercise the power, but the donee did exercise the power and the appointees accepted the appointment; it is therefore hard to see how in strict logic anything could pass under the will. A conditional interest does not take effect unless the condition is fulfilled; and indeed it can be argued that even though the appointees renounce, they should not be allowed to take under the gift in default, for renunciation after exercise of the power is not the equivalent of a failure to exercise it. But that would result in forcing the appointees to choose between taking under the power or taking nothing at all, and the Supreme Court, following In re Lansing, 182 N.Y. 238, 74 N.E. 882, refused to go so far in Helvering v. Grin-

---

[4] Emphasis added.

nell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, and held that when the appointees renounced, the property passed under the gift in default. There would have been nothing in that decision to contradict the theory that when they do not renounce, the property passes under the power, were it not that at the conclusion of the opinion (page 158 of 294 U.S., 55 S.Ct. 354, 356, 79 L.Ed. 825) the court said that it had granted certiorari because the two cases of Wear v. Commissioner, 3 Cir., 65 F.2d 665 and Lee v. Commissioner, 61 App.D. C. 33, 57 F.2d 399, were in conflict with the decision below; and then went on to say: "The reasoning and conclusions of those courts and of the court below cannot be reconciled. We are of opinion that, to the extent of the conflict, the view of the former is wrong and that of the court below is right." In both Wear v. Commissioner, supra, and Lee v. Commissioner, supra, the appointee had not, however, renounced, and pro tanto the reasoning in neither was in conflict with what had been said below as to the effect of renunciation, nor could it be. There was indeed conflict in reasoning because the two earlier cases had held that the exercise of a general power made the property a part of the donee's estate, which the lower court in Helvering v. Grinnell, supra, denied. The conflict in conclusion was necessarily complete, for the two earlier cases had held that the property passed under the power and not under the will, and while there was a ground of reconciliation in the fact of renunciation, the court did not suggest it.

The Third Circuit in Rothensies v. Fidelity-Philadelphia Trust Co., 112 F.2d 758 and the Fourth, in Legg's Estate v. Commissioner, 114 F.2d 760, thought that Helvering v. Grinnell, supra, went further than merely to hold that nothing passed under the power in cases of renunciation, and that it required them to compare the interest appointed with that passing under the gift in default, and to adopt as the test whether the first could be regarded as coming out of the second. We at least gave countenance to the same notion in Central Hanover B. & T. Co. v. Commissioner, 2 Cir., 118 F.2d 270, 273, and with narrow limitations it is laid down as law in the Restatement of Property, § 369. Mr. Griswold has discussed it in 52 Harv. L.R. 929, 933-937 (Powers and the Federal Estate Tax) and Mr. Paul in Federal Estate and Gift Taxation § 9.18. I cannot see that Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513, sheds any light upon the question. In the face of this authority I am not prepared to say that where the appointee does not renounce, the interests appointed must inevitably pass under the power. There is something to be said practically for the contrary, once we refuse to accept the rule that any exercise of the power is irrelevant. Certainly no donee would ever exercise a power in favor of a legatee in default if he knew that its only effect would be to include the property within his taxable estate. Nor does it seem quite fair to put it into the appointee's hands by accepting, instead of renouncing, an appointment which makes no difference to him, to throw the tax upon the donee's estate. On less provocation courts have often avoided such harsh results by holding that the intent of the testator was not correctly expressed in his words. I think that in the case at bar we can leave the question open, because, whatever the scope of the doctrine, it seems to me obvious that no interests should be excluded from the donee's estate to whose creation the exercise of the power was necessary. Assuming for argument that those may be excluded which could have been made to pass under the gift in default by a more sparing use of the power, they must be the limit.

There are two circumstances, each of which takes the case at bar out of the doctrine so understood: first, the life estates to the wife and daughter were equitable, not legal; and second, Peter, who was not a legatee in default, was an appointee, while Henry III, who was not an appointee, was a legatee in default. As to the first, there was no way other than by exercising the power that the donee could have changed the jural quality of what passed to his wife and daughter under the will. He could of course have appointed remainders to others, but that would not have been enough. The difference between a legal and an equitable interest might not in all jurisdictions be today considered serious enough to count; we no longer think so rigidly as we used to of a trust as a transfer of title to the trustee against whom the beneficiary has only rights in personam. Be that as it may, in New York the beneficiary of a trust like that set up in the case at bar has no power to dispose of the property (Real Property Law, Consol.Laws, c. 50, § 103(1), and

certainly that was a difference with which we cannot suppose that the donee was unconcerned. So I say that since he could not have realized his purpose without exercising the power over the interests of his wife and daughter it cannot be said that they took under the will.

Next as to the objection arising from the donee's appointment of a third interest to Peter for life with remainders over. Having created these, he could not have secured even a legal life interest in a third of the property to his wife or to his daughter without exercising the power over the whole of that third. Had he attempted to do so by merely appointing remainders over after their deaths upon what passed to them under the will, each would have taken a life interest in two-ninths, not one third, for Henry III would have taken a third of the two-thirds not disposed of. Had the donee tried to make up to each her missing ninth by appointing it under the power, it would have come out of the two-thirds, and would have left to pass under the will, not two ninths to each, but four twenty-sevenths. And so on in an infinite diminishing series. Only by appointing to each her third could he have given her a third; and it follows that, as in the matter of the quality of the interest so in the matter of its quantity, there was no interest which could be left unappointed to pass under the will without mutilating the donee's purpose. This is not true when the appointees and the legatees in default coincide; nor need it be true where the appointees include all the legatees in default and more. For example if the legatees in default were three and the donee wished to have them share equally and in common with a fourth person also sharing, he need only appoint one quarter to the fourth. "Illustration 3" to § 369 of the Restatement is an instance of how the same result could be brought about when the class of legatees in default is not enlarged but the division between them is changed. (I should not agree however that only one sixth passed under the power. The donee would have had to appoint one quarter to his daughter, because what he took from the gift in default would be marshalled against her share as well as the sons.)

For the foregoing reasons I reach the same result as my brother Frank without however committing us to the absolute doctrine that in the absence of renunciation all interests appointed must inevitably pass under the power.

CHASE, Circuit Judge, concurs in the result.