**LEWIS v. ROTHENSIES, Collector of Internal Revenue.**

No. 8221.

Circuit Court of Appeals, Third Circuit.
Argued May 7, 1943.
Decided Sept. 1, 1943.

N. Barr Miller, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and William A. Clineburg, Sp. Assts to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellant.

Thomas Raeburn White, of Philadelphia, Pa. (Richard C. Bull and White & Staples, all of Philadelphia, Pa., on the brief), for appellee.

Before JONES, and GOODRICH, Circuit Judges, and KALODNER, District Judge.

JONES, Circuit Judge.

The facts having bearing on the question here involved are that Algernon R. Clapp, who died in 1938 resident in Pennsylvania, appointed by will in trust for his wife for life and after her death to their two daughters outright in remainder certain property over which he had a general testamentary power of appointment under the will of his father, B. Frank Clapp, who had died in 1914 also resident in Pennsylvania. The property dealt with in Algernon R. Clapp's appointment embraced a portion of the corpus of a trust which B. Frank Clapp had created by his will for the life benefit of his widow and their son. The will of the father provided that the trust which he so created should terminate upon the death of his widow, the death of his son and the attainment by the children of the latter of the age of twenty-one years; and it further directed that, upon the termination of the B. Frank Clapp trust, the trustee should grant and convey to the then surviving issue of the son, per stirpes, the whole of the trust estate "excepting thereout, however, such portion or portions thereof as may have been disposed of by my surviving son * * * by his * * * Will(s) made in pursuance of the powers hereinbefore conferred * * *."

The material portions of the respective wills of the father and son are set out in the margin.[1] B. Frank Clapp left to survive him his widow, Clara B. Clapp, and his son and only child, Algernon R. Clapp,

---

[1] B. Frank Clapp's will provided in material part as follows:

"Sixteenth. I give, devise and bequeath unto the Fidelity Trust Company, its successors and assigns, all my real estate including ground rents, together with all my policies of insurance relating thereto, and all the residue and remainder of my bonds, mortgages, shares of stocks and money which I may have at the time of my death on hand or on deposit or which may be then owing to me In Trust for the following uses, intents and purposes, that is to say: In Trust to collect the rents, income and interest thereof and, after paying all necessary taxes and charges of the same and for all necessary repairs to the said real estate and the expenses of administering this Trust and also the other Trusts created by this Will, to pay one-half of the whole net income, when and as received and not by anticipation, into the hands of my wife Clara B. Clapp, during her life, in quarterly payments, to and for her own use and benefit, and to pay the other one-half of the said net income, and after the death of my wife the whole thereof, when and as received and not by anticipation, in quarterly payments, into the hands of my surviving child or children or the issue of any deceased child or children until the death of all my children

and the latter left to survive him his mother (Clara B. Clapp), then eighty years old, his wife and his two daughters, aged sixteen and seventeen years at the time of their father's death.

The question for determination is whether the property appointed by Algernon R. Clapp, deceased, to his two daughters in remainder, and whereof they were already the remaindermen under the will of their

and until all my grand-children attain the age of twenty-one years, each child taking an equal share and the issue of any deceased child taking together only their parent's share, the right of the issue of any deceased son or sons of mine so to take to be subject, however, to the last Will of such son or sons made in pursuance of the powers hereinafter conferred upon each and every son of mine who may attain the age of twenty-one years Provided that my said wife shall also have the right at any time and from time to time, during her life, to use my house No. 1908 Walnut Street and Stable No. 1733 Sansom Street or either of them, for a rental sufficient to pay for the repairs of the said properties or of whichever of them she may use, and after her death that my son Algernon R. Clapp shall have the said right during his life And provided further that should my surviving child or all my surviving children die during the life of my said wife without leaving any issue them surviving, or if there be any such surviving issue and all such issue die during the life of my said wife, that thereupon the whole of the said net income shall be paid as aforesaid into the hands of my said wife during her life subject, however, to the last Will of any son or sons of mine who may attain the age of twenty-one years made in pursuance of the powers hereinafter conferred upon each and every such son or sons. And I give unto each and every son of mine who may attain the age of twenty-one years the power to direct by last Will and Testament to whom one-half of the share of the said net income to which at the time of their respective deaths they may be respectively entitled or to which at any time thereafter they would be, if living, respectively entitled shall be paid until the death of my wife and of all my children and until all my grand-children attain the age of twenty-one years, And also so to dispose of one-half of each of the shares of the principal of the Trust Estate the income of which such deceased son or sons shall at the time of their respective deaths be respectively receiving or of which at any time thereafter they would be, if living, respectively entitled to receive * * *.

"And upon the death of my wife and of all my children and upon all my grand-children attaining the age of twenty-one years then In Trust to grant, convey assign, transfer and set over the whole of the said Trust Estate, excepting thereout, however, such portion or portions thereof as may have been disposed by my surviving son or sons by his or their last Wills made in pursuance of the powers hereinbefore conferred upon them, to the then surviving issue of my children, the distribution thereof to be made per stirpes. * * *"

The material provisions in Algernon R. Clapp's will are as follows:

"Fifth: In the event that my wife, Anne J. Clapp, survives me, and that competent legal evidence of such survival is produced within two years of my death, and in the further event that I shall not have received or become entitled to receive any part of the principal of the Trust Estate created by and held under the Sixteenth Article of the Will of my late father, B. Frank Clapp, pursuant to the terms of the Third Article of the Second Codicil, dated September 14, 1908 to said Will, and to the Will of my mother, Clara B. Clapp, then and in that case, I desire to exercise hereby my power of appointment under the Sixteenth Article of the will of my late father, and I hereby direct that one-half of the share of the net income of the Trust Estate created by and held under said article of my father's Will to which I shall be entitled at the time of my death, and one-half of the share of said net income to which at any time thereafter I should be entitled if living, shall be paid to my said wife until the death of my mother, Clara B. Clapp, and until all my children attain the age of twenty-one years; and upon the death of my mother, and upon all my children having attained the age of twenty-one years, I further direct that one-half of the share of the principal of said Trust Estate, the income of which I shall have been receiving at the time of my death, and one-half of the share of said principal of which at any time thereafter I should, if living, have been entitled to receive the income, shall be held by the Trustee for the time being of the Trust created by the Sixteenth Article of the Will of my late father, B. Frank Clapp, In Trust to collect the rents, income and interest thereof and, after paying all necessary taxes and charges of the same, and for all necessary repairs to real estate, and the expenses of administering the Trust, to pay the whole net income of said share of principal when and as received, and not by anticipation, into the hands of my said wife

grandfather subject to such appointment as their father might make, constituted a passing of the property through Algernon R. Clapp's exercise by will of a general power of appointment within the meaning of Sec. 302(f) of the Revenue Act of 1926 as amended. 26 U.S.C.A. Int.Rev. Acts, pages 227, 230.[2] The question arises in the suit of the executor of the will of Algernon R. Clapp, deceased, against the Collector for the recovery of the portion of federal estate tax paid on account of the inclusion in Algernon R. Clapp's gross estate, as required by the Commissioner of Internal Revenue, of the property appointed by him to his two children. All material facts were stipulated at trial. The District Court entered judgment for the executor in an amount appropriate to the claim and the Collector took the present appeal.

As justification for its action, the District Court relied upon our decision in Rothensies v. Fidelity-Philadelphia Trust Co. et al., 3 Cir., 112 F.2d 758. There, as in the instant case, the law of Pennsylvania governed the devolution of the property involved. Under the law of that state a devisee or legatee of property appointed in the exercise of a general power of appointment, who would have taken the property in the same, or even larger, estate under the will of the donor in default of appointment, takes the property, so appointed, by virtue of the donor's will and not under the will of the appointing donee. Thus, it has been held in Pennsylvania that "In the absence of an expressed contrary intention a legacy bequeathed in default of appointment, vests in the legatee on the death of the [donor] testator, subject to be divested by the exercise of the power of appointment." In re Freeman's Estate (No. 1), 35 Pa.Super. 185, 189, expressly approved by the Supreme Court of Pennsylvania in Re Freeman's Estate, 280 Pa. 273, 277, 124 A. 435, and again in 281 Pa. 190, 194, 126 A. 270. See also In re Potter's Estate, 13 Pa. Dist. & C. R. 667, 669. The rule is also applicable pro tanto to the extent that the donee by the exercise of his power

leaves in the legatee but a portion of the property whereof the latter was vested under the donor's will subject to divestment through an exercise of the power. Cf. In re Freeman's Estate (No. 1), loc.cit. supra. As cited in In re Freeman's Estate, the rule originated at common law.[3] It has been widely followed and, subject to certain specified limitations, is now incorporated in the Restatement of Property (1940) § 369.

Such being the controlling local law with respect to the devolution of the particular property appointed in the Fidelity-Philadelphia Trust Co. case, we there held on a parity of reasoning with Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, that a bequest to a legatee through the exercise of a general power of appointment of a portion of the property to which he was entitled under the will of the donor in default of appointment did not constitute a *passing* of the property through the exercise of the power and that, consequently, that requisite to the applicability of Sec. 302(f), 26 U.S.C.A. Int. Rev. Acts, pages 227, 230, as recognized in Helvering v. Grinnell, supra, 294 U.S. at page 155, 55 S.Ct. at page 354, 79 L.Ed. 825, was wanting. Accordingly, we held that the property so appointed was not to be included in the donee's estate, under Sec. 302(f), as property subject to tax.

It is true that in the Grinnell case the appointees renounced the appointment and elected to take under the donor's will as in default of an appointment, whereas in the Fidelity-Philadelphia Co. case, as in the instant case also, there was no renunciation. Quite incidentally, it is our belief that renunciations in such circumstances are unknown to the law of Pennsylvania. However that may be, they add nothing to what the particular local law otherwise confers.

We deemed it to be a matter of importance to the decision in the Grinnell case that the property had not passed by the decedent's exercise of the power within the meaning of Sec. 302(f) and concluded that

---

during her life, in quarterly payments, to and for her own use and benefit. And after the death of my wife I direct said Trustee to grant, convey, assign, transfer and set over the whole of said share of principal to my then surviving child or children, or the issue of any deceased child or children, per stirpes."

2 Sec. 302 of the Revenue Act of 1926 in part here material provides that:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, * * * *."

3 Cunningham v. Moody, 1 Vesey Gen. 174, 27 Eng.Rep. 965 (1748).

the pertinent Pennsylvania rule of property created, under the circumstances obtaining in the Fidelity-Philadelphia case, notwithstanding there was no renunciation, the material legal situation present in the Grinnell case, hence, our ruling as above stated. The decision in Rothensies v. Fidelity-Philadelphia Trust Co. was later followed by the Court of Appeals for the Fourth Circuit in Legg's Estate v. Commissioner, 114 F.2d 760, and cited with apparent approval by the Court of Appeals for the Second Circuit in Central Hanover Bank & Trust Co. v. Commissioner, 118 F.2d 270, 273, both times as to the absence, under materially similar circumstances, of a *passing* of the subject property in the exercise of a power of appointment.

As the Fidelity-Philadelphia Co. case and the instant case cannot be distinguished, at least not to the disadvantage of the taxpayer, the Collector frankly disputes the correctness of our former decision and with equal candor asks that we overrule it. In support of the action which he thus urges us to take, he cites a recent decision by the Court of Appeals for the Second Circuit (Commissioner v. Estate of Rogers et al., 135 F.2d 35, decided April 2, 1943), which he says rules oppositely to our former decision. We are unable so to construe the net result of the court's ruling in the Rogers case, as will later appear. Furthermore, the Collector presses upon us the decision of the Supreme Court in Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 62 S.Ct. 925, 930, 86 L.Ed. 1266, as making certain that our former ruling was wrong in respect of our construction of the decision in the Grinnell case. Certiorari has been granted in the Rogers case but, as we are unable to perceive any conflict between the decision in that case and our own in the Fidelity-Philadelphia case, we have nought to do but dispose of the instant appeal on the basis of the law which we deem to be applicable.

In the Safe Deposit & Trust Co. case, supra, Mr. Justice Black, speaking for the majority of the Court, said of Helvering v. Grinnell, supra, that: "The subsequent renouncement by the appointees of the right to receive by appointment and their election to take as remaindermen in default of appointment were held by this Court to place the property subject to the power outside the scope of Section 302(f)." The minority of the Court treated the Grinnell case as holding to substantially the same effect. It is manifest that the legatees in the Grinnell case renounced the appointment, as was their right under local law, and it is equally certain that the Supreme Court held in that case that the renouncement of the appointment determined conclusively that nothing had passed within the contemplation of Sec. 302(f) by virtue of the exercise of the power. But neither in the majority nor the minority opinions in the Safe Deposit Co. case is there any suggestion of the proposition, now advanced by the Collector, that a renunciation of an appointment is a sine qua non to excluding property dealt with in the exercise of a power from the operation of Sec. 302 (f) even where, under local law, property which is appointed to persons who would have taken it in the same or larger estates under the donor's will in default of appointment *passes* under the will of the donor and not by virtue of the donee's exercise of the power. The question as to what, if anything, *passes* in the exercise of a power in such a manner was neither present nor discussed in the Safe Deposit Co. case. And the reference there to the Grinnell case was for the purpose of illustrating how action taken by beneficiaries after their testator's death can affect the liability of the decedent's estate for federal estate taxes. This was material by way of answering the taxpayer's contention in the Safe Deposit Co. case that matters "occurring after the decedent's death, which is the 'taxable event' under an estate tax, should not be considered." See Helvering v. Safe Deposit & Trust Co., supra, 316 U.S. at page 65, 62 S.Ct. at page 930, 86 L.Ed. 1266. And, for that purpose, the conclusive effect accorded the renunciation in the Grinnell case was a pointed and an effective answer.

But we think that the Grinnell case also decided that where, according to local law, nothing passes in the exercise of a general power of appointment when the donee appoints to the same persons who would have taken the property in default of appointment, there is not in such circumstances a "passing" of the property so as to render it subject to the provisions of Sec. 302(f).[4]

4 See Griswold, Powers of Appointment and the Federal Estate Tax, 52 Harvard Law Review 529, 533–538. For an interesting note on the Grinnell case see also 45 Yale Law Journal 172, where the commentator states that in refusing to up-

That this is so, we think the record in the Grinnell case clearly demonstrates. In support of the judgment below in Grinnell v. Commissioner, 70 F.2d 705, 708, the Court of Appeals for the Second Circuit had held, inter alia, that: "The appointees not only declined to take the gift, but the appointment when exercised in favor of the same persons who would take irrespective of it was 'a mere form with no substance' which the law of New York that regulates the passage of title had refused to recognize." In relevant connection, the Supreme Court, after denominating as "well considered" the case of Matter of Lansing's Estate, 182 N.Y. 238, 74 N.E. 882, upon which the Court of Appeals had "leaned confidently", added that,—"We think the reasoning of the New York court as to the meaning and application of the state law equally applies to the federal statute here in question. There, as here, the contention of the taxing authorities (there under the state act, here under the federal act) was that the appointee named in the will of the donee of the power took her property thereunder and not under the will of the creator of the power, notwithstanding the property had been given to her by the will of the latter subject to the power of appointment." [294 U.S. 153, 55 S.Ct. 355, 79 L.Ed. 825.] After referring to the state court's further answer in Matter of Lansing's Estate that the legatee had the right to renounce the appointment and to elect to take under the donor's will, the Supreme Court significantly quoted from the state court's opinion with respect to the local property law wherein it was said that "Although the power was exercised in form, her [the appointee's] title was perfect without it, and she derived no benefit from it." This treatment of the local law was, in our opinion, the basis of a decision in the Grinnell case that, where under local law there is no passing of property in the exercise of a power because the appointment is to the same persons who would have taken in default of appointment, the requirements of Sec. 302(f) have not been met. This view is further confirmed, and we think conclusively, by the opinion in the Grinnell case.

Certiorari was granted in the Grinnell case because of an asserted conflict with the cases of Wear v. Commissioner, 3 Cir., 65 F.2d 665, and Lee v. Commissioner, 61 App.D.C. 33, 57 F.2d 399. In resolving the conflict the Supreme Court said 294 U.S. at page 158, 55 S.Ct. at page 356, 79 L.Ed. 825 that: "The reasoning and conclusions of those courts [in the Wear and Lee cases] and of the court below [in the Grinnell case] cannot be reconciled. We are of opinion that, to the extent of the conflict, the view of the former is wrong and that of the court below is right, and we hold accordingly."

What, then, was the conflict which the Supreme Court there resolved? So far as the recognized impossibility of reconcilement is concerned, it is noteworthy that there was neither renunciation nor attempt to elect to take under the donor's will in either the Wear or the Lee case. Yet, the Supreme Court passed that by as a possible basis of reconciliation and made no mention of the distinction. Professor Griswold refers to this as fortifying the conclusion that "the basis of the [Grinnell] case is that nothing 'passed' because the appointee already had an interest which simply was not taken away by the exercise of the power, * * *."[5] While we do not say that it was *the* basis of the Grinnell decision, we do feel justified in concluding that it was at least one of several sufficient bases, for it is in connection with that very rule of local property law in its relation to the meaning of the word "passing" in the federal tax statute that there exists the only conflict apparent between the Grinnell case and the Wear and Lee cases, as we shall now see.

In the Wear case, which was concerned with the taxability to the donee's estate under Sec. 302(f) of property appointed to persons who would have taken as legatees of the donor in default of appointment and the devolution of the property was governed by the law of Pennsylvania to which we have already referred, this court held that Congress "intended the tax should be laid, not on property *and therefore not to be bound by a state rule of property*, but on an event arising upon the death of the donee, that is, the exercise

---

hold the Commissioner's contention that the remainder was taxable as part of the donee's gross estate, the Supreme Court held "that since donor's remaindermen had not been divested by donee, *and in addition* had elected to succeed from donor,

the property did not 'pass' from donee under exercise of her power." (Emphasis supplied.)

[5] See Griswold, Powers of Appointment and the Federal Estate Tax, 52 Harvard Law Review 929, 935.

of a power of appointment effective on his death." [65 F.2d 667.] (Emphasis supplied.) The ruling in the Lee case was to the same effect. However, the Court of Appeals for the Second Circuit, after specifically referring to the Wear case and aiming directly at the ruling in that case as above quoted, said in the Grinnell case, 70 F.2d at page 708 "We need not differ with the conclusion that it might be taxed, but we think it was not taxed by an act directed only at property 'passing under a general power of appointment' because there was no such property here."

If it be suggested that the Court of Appeals for the Second Circuit meant that there was "no such property" there because the right had been extinguished by the renunciation, then the basis of conflict between the Grinnell and the Wear case at once vanishes for, as already stated, there was no extinguishment of the appointed right through any renunciation in either the Wear or the Lee case. There was "no such property" in the Grinnell case, as the Court of Appeals immediately made plain, because under local law "the appointment * * * in favor of the same persons who would take irrespective of it was 'a mere form with no substance' * * *." And the Supreme Court, in evident disapproval of the rejection by the Courts of Appeals of the local law for determining what had passed in the exercise of the powers in the Wear and the Lee cases, even though unaffected by renunciations, and in equally evident approval of the Second Circuit's construction of the word "passing" as influenced by the particular rule of local law, said 294 U.S. at page 156, 55 S.Ct. at page 355, 79 L.Ed. 825, that "The tax here [i.e. by virtue of Sec. 302(f)] does not fall upon the mere shifting of the economic benefits in property, but upon the shifting of those benefits by a particular method namely, by their 'passing under a general power of appointment,' and not otherwise." The conclusion seems inescapable, especially in view of the conflict which the Supreme Court resolved in the Grinnell case, that what was meant was that the passing of property in the exercise of a general power of appointment is to be determined according to local law whether the important factor be the appointee's renunciation or the rule which renders ineffectual an appointment to the extent that the donee appoints to the same persons who take the property in the same or larger estate in default of appointment.

Wherein, then, is there any basis for asserting that, since the Supreme Court's incidental use of the Grinnell case in the Safe Deposit case, the rule now is that unless there be a renunciation, appointed property must necessarily be deemed to have passed in the exercise of the power notwithstanding that under local law it did not so pass? Manifestly, no intention was evidenced in the Safe Deposit Co. case to overrule the decision in the Grinnell case either in whole or in part. Furthermore, there is much to be said for the idea that a right to renounce and elect confers nothing upon an appointee that he does not otherwise enjoy under local law.[6] Surely, a legatee in default of appointment cannot improve his lot by renouncing appointments made to others and then claim for himself the appointed property so renounced as in default of appointment. By renouncing, such a legatee can take nothing more than what his renounced appointment delimits, the exercise of the power being otherwise valid. But he already has that without the necessity of renouncing where, under local law, property appointed to the legatee in default of appointment passes by the will of the donor and not by virtue of the appointment. A renunciation in such circumstances amounts to little more than one of the useless forms which legal ingenuity, out of an overabundance of caution, has devised from time to time. Cf. Restatement, Property (1940) § 369, comment c. What possible reason could there be for entrenching an appointee's renunciation as the all-exclusive determinant as to whether or not the donee's appointment was fully effectual, so far as he was concerned, to pass the property in the exercise of a general power? The revenue laws exhibit no eagerness to enable a mere volunteer to flit about in quest of a choice as the source of his inheritance, and particularly not where the occasion for the choice is created by his own voluntary act with no chance of improving the extent of his interest.

In the Rogers case, supra, apparently no two or more members of the Court were in agreement except as to the result in which all three concurred. There are two separate opinions and a notation of concurrence in the result. Judge Frank alone was of the opinion that, "as there were no renunciations, all the appointed interests

---

6 Same reference as footnote 5.

must be included in decedent's estate under § 302(f)." [135 F.2d 38.] As opposed to this view, Judge Learned Hand, in a separate opinion, expressly declined to commit the court to what he aptly denominated "the absolute doctrine that in the absence of renunciation all interests appointed must inevitably pass under the power." And Judge Chase noted his concurrence in the result without joining in the separate opinions of either of his brothers. Judge Hand further found two circumstances which he thought took the Rogers case out of the doctrine of the Fidelity-Philadelphia, the Legg and the Central Hanover cases. It is hardly correct to say, therefore, that the Court of Appeals for the Second Circuit disagreed in the Rogers case with the ruling in the Fidelity-Philadelphia, the Legg and the Central Hanover cases when the court, by a majority, did not so declare itself.

Whatever bearing the differences, either in quality or quantity, between the estate appointed and the estate which the appointee would have taken in default of appointment may have generally on the applicability of the local law as to the effect of an appointment to a legatee upon default, it can be of no moment in the instant case. Here, the estate bequeathed outright by the donor to his son's children, subject of course to the son's exercise of his power, and the estate appointed by the son to his children was the same, viz., an absolute estate in remainder in certain of the B. Frank Clapp trust property. The only change worked by the son's exercise of his power was that his children's enjoyment of their absolute estate in remainder upon the termination of the trust under the donor's will was postponed for the further duration of the life of the son's wife (not a remainderman under the donor's will) for whom the son carved out a life estate in the trust corpus by the exercise of his power. Yet, that is exactly what had happened in In re Freeman's Estate, supra, which lays down the Pennsylvania rule.

That nothing passed in the instant case by virtue of the donee's appointment of the trust property to his children after the death of his wife is evident from the fact that, had the son by his will done no more than appoint to his wife for life (as he did), his children would have taken the trust property in remainder just the same for that is what the donor's will provided. Upon the termination of the trust under the donor's will, the trustee was directed to grant and convey the trust estate to the surviving issue of the son, per stirpes, "excepting thereout, however, such portion or portions thereof as may have been disposed of by my surviving son * * * by his * * * Will(s) made in pursuance of the powers hereinbefore conferred * * *." Obviously, the further provision in the son's will that, after the death of his wife, the trustee should grant and convey the trust property to his surviving children, per stirpes, gave the children nothing in addition to what they already had under the will of the donor.

■ Finally, the Collector argues that the meaning of the word "passing" in Sec. 302(f) presents a question of federal law which should be determined without resort to local law. Of course, the construction of a federal statute raises a federal question. But for a federal court to interpret a word employed in a federal statute as calling for a recognition of property rights as governed by local law which regulates the title thereto is but giving federal effect to the word used. There is no resort to local law for ascertaining the meaning of the word "passing". The federal courts, adopting as the legal definition of the word "passing" the transfer of property rights according to the law of the sovereignty which regulates and secures the title thereto, then necessarily look to the local law to determine what rights have been so transferred. The Wear and Lee cases said that, under Sec. 302(f), it was irrelevant to do this so long as a general power of appointment was exercised by will, but the Court of Appeals in the Grinnell case held that "passing" meant "the passage of title" according to the law of the state governing the title. The Supreme Court approved the latter view and gave the complete answer to the Collector's present contention in this connection when, in overruling the Wear and Lee decisions, it said in the Grinnell case that "Acceptance of the government's contention would strip the italicized word [passing] of all meaning.".

The judgment of the District Court is affirmed.