HILL ET AL. *v.* GODWIN ET AL.

[81 South. 790, Division A, No. 20648.]

1. WILLS. *Joint will.*
   While two or more persons may jointly execute a single testamentary document, sometime spoken of as a joint, double, mutual or reciprocal will, yet this document constitutes the valid separate will of each of those executing it, and on the death of each it may be probated as a will.

2. WILLS. *Joint will of wife and second husband. Intention.*
   When a wife and her second husband executed a joint will, which provided that the survivor should hold the property while unmarried, otherwise it should be divided between all their heirs, but at their death, if neither should marry, their property

should be divided between their heirs. In such case, the intention of the wife was to give to the husband a life estate, provided he did not remarry, and at his death that the property be divided equally among her heirs meaning all her children, by both of her husbands and their descendants. The husband's intention was for his wife to take his property in the same manner and at her death for his property to be divided equally among his heirs consisting of his children by his wife.

APPEAL from the chancery court of Tippah county. HON. J. G. McGOWEN, Chancellor.

Suit by E. L. Godwin, Administrator C. T. A. and others against Mark Hill and others. From a decree overruling demurrer to the bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*Spight & Street,* for appellants.

It is an elementary principle of law that in the construction of a will it is the duty of the court to ascertain if possible, from reading the entire instrument what was the intention of the testator, and when such intention has been ascertained to give it full effect. It is also true in law that, "Words occurring more than once in a will are presumed to be used always in the same sense when the context does not show a contrary intention or when the words are not applied to different subjects." 30 Am. & English Enc. Law (2 Ed.), page 671, section 3, sub-title, "Repetition of words."

It will be noted that in this will the pronoun "our" first occurs in the expression, "our last will and testament." This can only mean the common act of Sam and Jane Hill, and can have no reference to anything except their joint act. The second time it is used in speaking of "our property." This, of course, can only mean the property common to Sam and Jane Hill. The third time it occurs in speaking of "our death," which, of course has reference only to the death of Sam and Jane Hill. The fourth time is when it speaks of "our

ares." The fifth time it again refers to "our death," the sixth time again to "our property," and the seventh and last time again to "our ares."

"In the construction of wills, words not technical are to be understood, as a general rule, as used in their plain and usual sense, and will be liberally construed to that end in the absence of a manifest intention of the testator to the contrary, and when such interpretation is not inconsistent with the rest of the will." 30 Am. & Eng. Enc. Law, page 670, sub-title, "Language of Will."

"The meaning of words used may be determined by looking to the language and context of the will." 30 Am. Eng. Enc. Law, Page 671, sub-title, "How Meaning Determined."

It is a cardinal rule of construction in dealing with wills, not only that the intention of the testator must be sought by the court but it is also true that, "in endeavoring to construe a will so as to ascertain the intention of the testator, the courts will put themselves as far as possible in the position of the testator by taking into consideration his modes of thought and the circumstances surrounding him at the time of the execution of the will." 30 Am. & Eng. Enc. Law, 666, at the top of the page.

In applying this rule to the case at bar we must remember that this will was speaking the language and intention of both these old people. We must remember that from the face of the bill by far the larger part of the property disposed of by this will belonged to Sam Hill; that he and his wife were the parents of six children who had been born into the family, reared to manhood and womanhood, and contributing by their labor, care and attention in accumulating the property which these parents possessed. It is not shown that the Godwin children, the step-children of Sam Hill ever rendered any service, or contributed anything to the common funds so that no possible

reason could be given for Sam Hill proposing to divide his property so as to make his step-children, and his step-grand-children equal to his own in the disposition of his property; on the other hand it can be easily understood why Jane Hill agreed with her husband that all of her property and his too should be given to children who were common to both because they had helped them to make it, and because it is not known anywhere that the Godwin children ever even lived in the home of their step-father, Sam Hill.

It is also shown by inference, at least, on the top of page 4 of the record in the original bill, that the property which descended to the Godwin children from their father and grandfather had been distributed to them, and that no part of it entered into the sum of the estate of Sam Hill.

In addition to the foregoing views as to the effect and purpose in the use of the word "our," so frequently used in this short will we would add that lexicographers define the word as "Pertaining to or belonging to both of us," so that taking the two together there remains in our minds no doubt as to what was intended by these two old people in writing this will.

There is another presumption of law which would apply with special force in the endeavor to ascertain the intention of these two people in making this will. If it had been the purpose of Jane Hill to have her property descend in the manner contended for by counsel for appellees, then a will was wholly unnecessary and the fact that she made a will is presumptive evidence that she intended to take her property out of the rule of descent and distribution as prescribed by the laws of the state. When Sam Hill in conjunction with his wife, said, "our ares" he could not have had in mind the Godwin children and grandchildren because they never were and never could become his heirs at law. When Jane Hill said "our ares" she necessarily included the six Hill children because they were her

heirs at law. Therefore if, as we contend, a proper construction of this will limits the distribution of the property therein conveyed to the six Hill children every intendment, both of law and heredity, has been met, and such a construction would give full effect to the intention of both these old people. Whereas a division in the manner contended for by appellees would do violence to the purpose of at least one of them.

The Hill children as a class met all the requirements of the language used in this will, but the Hill and Godwin children combined do not, and cannot, meet such requirements.

*S. N. Ayres, Jr.* and *Thos. E. Pegram,* for appellees.

The court, in construing a will must ascertain the intention of the testator, gathered from the whole scheme of the will, taking into consideration and giving weight to each word thereof. *River* v. *Burrage,* 110 Miss. 789; *Chrisman* v. *Bryant,* 108 Miss. 311; *L'Hote*-v. *Roca,* 102 Miss. 121; *Henry* v. *Henderson,* 103 Miss. 48; 101 Miss. 751; *Ball* v. *Phelan,* 94 Miss. 293.

The presumption is that the testator will not and does not intend to favor any particular children or set of children unless, it clearly appears from the will that such is the testator's intention; and the presumption also is that when the word "Heirs" is used, all heirs are included. *Ball* v. *Phelean,* 94 Miss. 293; *Harkleroad* v. *Bass,* 84 Miss. 843; *Irvine* v. *Newlin,* 63 Miss. 192; *Love* v. *Buchanon,* 40 Miss. 758.

Where any ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption is that the testator intended that his property go in accordance with the law of descent and distribution, and those laws will be applied as an aid in construing a will; hence, such construction should be given the will as

favors the heirs at law. The law of inheritance prevails against the terms of a will and aids in construction where the terms are ambiguous. Heirs and next of kin cannot be excluded by words of doubtful or of uncertain meaning as doubts are solved by reference to the interstate law. 40 Cyc. 1412; *Ball* v. *Phelan,* 94 Miss. 293; *Stephens* v. *Druly,* 4 Ind. 519; *Hubberts Estate,* 6 Pa. Dist. 96; *Evans Estate,* 11 Kulp. (Pa.) 212.

The testatrix in the instant case, by the use of the words "our ares" intended to include all of her heirs, which necessarily include the complainants. *Crossen* v. *Dwyer* (Texas), 30 S. W. 929; *Vaughn* v. *Vaughn,* 33 S. E. 603, 97 Va. 322; *Back* v. *Metz,* 25 Mo. 70; *Crawley* v. *Knapp,* 42 N. J. Law 297; *Kiddre* v. *Kidder* (N. J.), 56 Atl. 154; *Henry* v. *Henderson,* 101 Miss. 751, p. 758.

SYKES, J., delivered the opinion of the court.

This suit originated by bill filed in the chancery court of Tippah county by E. L. Godwin, administrator c. t. a. of the estate of Jane Hill, and certain heirs of Jane Hill, against other heirs of Jane Hill. The principal purpose of the bill is to have the will of Jane Hill construed by the court. The real controversy in the case is whether or not the children of Jane Hill by a former marriage should participate equally in her estate with her children born to her of a marriage with Sam Hill. A demurrer was interposed to the bill in the lower court. This demurrer was overruled, and an appeal allowed to this court to settle the principles of the case. The will in controversy is very short, and reads as follows:

"Will of Sam and Jane Hill.
"April 5th, 1905.
"We, Sam Hill and Jane Hill, of the county of Tippah and state of Mississippi, being of sound mind and knowing the uncertainty of life, and that death is liable to

occur at any time, make this our last will and testament; that we give·and bequeath all our property, both real and personal, at·our death as follows:

"The survivor of either of us to have and hold all the property so long as they live unmarried, and if they should marry, then the property to be divided equal between all our ares, but at our death, if neither should marry again, our·property and effects of every discription to be divided between our ares.

[Signed] SAM HILL.

JANE HILL.

"W. F. GODWIN,
"MOLLIE LEE GODWIN, Witnesses."

Before her marriage to Sam Hill, Jane Hill was a widow and had several children by her first husband. She and Sam Hill had six children as the result of their marriage. Jane Hill died before Sam. This will was duly admitted to probate as the last will and testament of Jane Hill, and under it Sam took and held possession of Jane's separate property, which consisted entirely of personal property, during his life. At the death of Sam Hill this will was duly probated as his will. This controversy is between the children of Jane Hill by her first husband and her children by Sam Hill. The children of the former husband claim that they are entitled to their *pro rata* part of the separate estate left by their mother, Jane Hill. At the time of the execution of this will each of the signers of it owned separate property.

While two or more persons may jointly execute a single testamentary document, sometimes spoken of as a joint, double, mutual, or reciprocal will, it is well settled in America that this document constitutes the valid separate will of each of those executing it, and that on the death of each it may be probated as a will. This rule is fully and clearly stated in volume 1, Com-

mentaries on Wills, Alexander, section 69, pages 83 and 84, as follows:

"In many decisions it will be found that testamentary dispositions are referred to as joint or mutual or reciprocal wills; this, however, is incorrect, for no matter what the form of the will may be, and although two or more persons may jointly execute a single testamentary document, the instrument is the separate will of each testator, and its legal effect is separate and distinct, and not joint. In this regard there cannot be a joint will. Two or more persons can undoubtedly make separate wills in favor of each other or of some third party; but there is no legal objection to making the same dispositions by one document. The law does not hold it to be a single will because all the makers have subscribed the same instrument, or have declared it to be their last will and testament in the presence of the same witnesses and at the same time, but views it as the separate act of each. After the death of the one first dying, the instrument may be offered and proved for probate as his will, and the signatures, declarations, and acts of the others although they may be admitted in evidence as part of the *res gestæ*, may be regarded as surplusage in so far as proving the will of the one deceased is concerned. The same testamentary document may thereafter, in the event it has not been revoked by a survivor, be admitted to probate as his will. The property disposed of may be joint or separate, but the declared intentions of each testator affect only his own property or his share in joint property."

The contentions of the appellants are that by this will Sam and Jane Hill meant to treat the property of each as the common or community property of both; that on the death of one the survivor was to take a life interest in the property, or until he or she married, and at the survivor's death all the property was to be divided among the children born of this marriage; that the words "and at our death, if neither should marry

again, our property and effects of every discription to be divided between our ares," can only mean the children born of this marriage; that it would be unreasonable to believe that Sam Hill intended to leave any of his property to the children of Jane Hill by her first husband.

It is the duty of the court to ascertain and enforce the actual intent of the testatrix, and this intent is to be gathered from a consideration of the will as a whole, giving effect, if possible, to each and every word used therein. A mere glance at the will shows that neither Sam nor Jane were versed in the law nor in the correct use of the English language. The phraseology and spelling in the will conclusively show this. It is also a reasonable inference that the will was not drafted by one learned in the law. It is to be noted that the will makes exclusive use of the plural pronoun. The possessive pronoun "our" appears in this will several times: The first time, "make this our last will and testament," meaning the will of each. Then "give and bequeath our property," meaning the separate property of each. "At our death," necessarily meaning the separate death of each, because the next provision in the will is for a life estate in the survivor, provided he or she does not marry. This survivor in that clause is also referred to by the plural pronoun "they." If this survivor marries, "then the property to be divided equal between all our ares." This is immediately followed by "and at our death," thereby meaning the death of the survivor. Then follows the last phrase in the will, about which this controversy has arisen, namely, "our property and effects of every discription to be divided between our ares."

It was clearly the intention of both Sam and Jane Hill to provide a lift estate for the survivor, provided this survivor did not marry. The clause, however, referring to this life estate, negatives the idea that these

two people meant to consider their property as the common property of both, for the reason that in case of the marriage of the survivor the property of one dying first necessarily under the will was immediately to go to those designated in the last clause as "our ares." Neither Sam nor Jane meant by this will to divest themselves of their separate estates, so that, in case the survivor married again, then he or she would not only lose the estate of the one dying first, but would also lose the property to which originally he or she had title. While, as argued by counsel for appellants, it would seem unreasonable for Sam Hill to allow Jane's children by her former husband to share equally with his children in his estate, we do not think the will admits of any such unreasonable construction. It would, however, be unreasonable and contrary to parental instinct and love for a testator or testatrix, without giving any reason therefor, to cut off from his bounty some of his children. In other words, in the absence of an intention expressed or to be clearly inferred from the terms of a will, it is to be presumed that the testatrix meant for all of her children to share equally in her bounty.

We think the intention of Jane Hill, as shown by an examination of the entire will, was to give her husband a life estate in her property provided he should not marry again, and at his death for this property to be divided equally among her heirs, which here meant her children and their descendants by both husbands. Sam Hill's intention was for his wife, Jane, to take his property in the same manner, and at her death for his property to be divided equally among his heirs, consisting of his children by Jane.

Considering this as the separate will of Jane Hill, and using the singular pronoun wherever the plural pronoun appears in the will, the words "our ares" would then read "my ares."

*Affirmed and remanded.*