ESTATE OF Leo M. GARTLAND, Deceased, Matthew Gartland, Administrator, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13294.

United States Court of Appeals Seventh Circuit.

Aug. 4, 1961.

Rehearing Denied Sept. 7, 1961.

Sol Goodman, Cincinnati, Ohio, M. S. Cassen, Indianapolis, Ind., William A. McSwain, Chicago, Ill., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Joseph Kovner, Lee A. Jackson, I. Henry Kutz, Attys., Tax Division, U. S. Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and PLATT, District Judge.

PLATT, District Judge.

This is a petition by Matthew Gartland, executor of the estate of Leo M. Gartland, deceased, to review a decision of the Tax Court (1960, 34 T.C. 867) adjudging a deficiency in the Federal estate tax of $84,321.08 in his father's estate, by the inclusion of the property valued at $258,968.29 in a trust created by Matthew F. Gartland, the petitioner's grandfather.

The facts of the case are uncontroverted. On July 10, 1929, decedent's father, Matthew F. Gartland, a resident of Indiana, set up a trust whereby he transferred certain assets to S. Roswell Shepherd of West Orange, New Jersey, as Trustee. On July 18, 1929, Shepherd accepted the trusteeship and five (5) days thereafter, under the authority of the trust agreement, appointed the National City Bank of New York as co-trustee and the Farmers Loan and Trust Company as successor trustee, should the appointed co-trustee resign. The National City Bank accepted this appointment, and on August 6, 1929, Shepherd resigned as co-trustee. On January 20, 1930, the National City Bank resigned as trustee and the City Bank Farmers Trust Company, successor to the Farmers Loan and Trust Company, accepted appointment as successor trustee. At the time of Leo M. Gartland's death, on April 1, 1955, the City Bank Farmers Trust Company was still acting as trustee.

Pertinent portions of the trust created by Matthew F. Gartland provided:

"1. In disposing of the income and principal of this trust the Trustee's duties shall be:

"A. To pay over to my son, Leo M. Gartland, so much of the income as the Trustee in his discretion shall deem advisable and to accumulate the remaining income and add it to the principal of the trust fund during the life of my said son.

"B. Upon the death of my said son to pay over the income to my daughter-in-law, Irene S. Gartland, during her life.

"C. Upon the death of the survivor of my said son and my said daughter-in-law, to divide the principal of the trust fund into so many equal shares that there shall be one for each child of my said son then living and one for the descendants then living of each deceased child of my said son, and to dispose of the income and principal of such shares as follows: * * *"

The trust further provided that the income be paid to each child until such child attained a certain age at which time the principal was to be distributed to such child, or as each might appoint by will, and if no appointment was made to the descendants of such child, and in default of descendants the trust was to be distributed to the descendants, if any, of the son of the Settlor, and in default of descendants of the son to the descendants of the Settlor, all in equal shares *per stirpes*. (The trust was modified to avoid a violation of the rule against perpetuities. This modification is immaterial here.) The trustee in his discretion could pay the minor children, or on their behalf, such portion of the principal he deemed advisable for their use and benefit; the trustee had full power

578

to use the trust property in any way he deemed advisable; during the life of Leo M. Gartland, the decedent, the trustee was required to secure written approval of the decedent prior to the purchase or sale of any security which the trustee proposed to make. The trust then created a general power of appointment:

"8. I hereby authorize and empower my son, Leo M. Gartland, during his life, to amend or terminate this agreement in whole or in part and to change any beneficial interest hereunder by delivering to the Trustee an instrument in writing excuted by him. In the event of the termination of this trust by my said son, the Trustee shall pay over the principal of the trust fund to him or to such person or persons as he may designate in writing to the Trustee."

The trust also provided:

"12. The trust hereby created shall be irrevocable, shall take effect upon acceptance by the Trustee, and in all respects shall be governed by the laws of the state of New Jersey."

On May 16, 1931, the decedent sent a letter to the trustee which read in part:

"Owing to present conditions the writer finds it necessary to use the income of his trust. You may use this as your authority to transfer the cash in my principal account to the income account and send check at your convenience."

Pursuant to this letter, the trustee on May 19, 1931, paid the decedent $1,292.98, which was made up of $547.35 of prior accumulated income and $745.63 representing current income. The trustee in its letter replied in part:

"We are noting on our records that you wish all of the income remitted to you."

Decedent on January 19, 1938 ratified the 1931 payment by a document addressed to the trustee. A portion thereof read:

"WHEREAS, Subdivision 'A' of Article 1 of the aforesaid trust reads as follows:

"A. * * *

"WHEREAS, Article 8 of the aforesaid trust reads as follows:

"8. * * *

"WHEREAS, by letter dated May 16, 1931 the said Leo M. Gartland partially revoked the trust by withdrawing therefrom the sum of $547.-35, being income which had been accumulated prior to May 16, 1931 and added to the principal of the trust fund, and the said Leo M. Gartland, pursuant to said letter dated May 16, 1931, amended said trust to provide that the income therefrom should be paid to him until further notice, and

"WHEREAS, the said Leo M. Gartland desires to ratify, confirm and approve the said withdrawal of the said sum and said amendment made by him to said trust by said letter dated May 16, 1931,

"NOW, THEREFORE, the said Leo M. Gartland does hereby ratify, confirm and approve the withdrawal by him of the said sum of $547.35, payment of which was made to him on May 19, 1931, * * * and the said Leo M. Gartland does hereby amend said trust by striking out, canceling and annuling Subdivision 'A' of Article 1 thereof and by substituting in lieu thereof a new Subdivision 'A' of Article 1 which shall read as follows:

" 'A. To pay over the net income thereof to my son, Leo M. Gartland, during his life.'

all with the same force and effect as if this instrument had been delivered by him to said Trustee on May 16, 1931."

June 20, 1945, decedent sent a further document to the trustee which read in part:

"SURRENDER BY LEO M. GARTLAND OF POWER OF APPOINTMENT UNDER TRUST AGREEMENT OF MATTHEW F. GARTLAND

"Know All Men By These Presents:

"That I do hereby finally and irrevocably renounce, release and surrender the Power of Appointment which is conferred upon me in and by Paragraph 8 of a Trust Agreement made by my father, the late Matthew F. Gartland, of Marion, Indiana, dated July 10th, 1929, over the trust fund for my benefit under said trust agreement.

"It is my intent by this instrument to divest myself completely and irrevocably of all powers, rights and privileges granted to me by said trust agreement to dispose of, or to direct the disposition of, the principal or income of any part of the trust fund for my benefit under said trust agreement, as if such power of appointment had not been granted."

The decedent merely took the income from the trust for his life.

In seeking a reversal, the petitioner makes a three-fold attack on the decision of the Tax Court. First, he contends that neither the decedent's letter of May 16, 1931, as ratified by the 1938 amendment, nor his release of his powers on June 20, 1945, constituted an "exercise" of a pre 1942 general power of appointment; secondly, that by virtue of the New York law which prohibited the accumulations of income except during the minority of a beneficiary, decedent's letter, as ratified by his amendment, was not an exercise of a general power of appointment; and finally, that even if it be assumed that any one or all of the three instruments constituted an "exercise" of a pre 1942 general power of appointment, such exercise did not make a disposition of the type described in sections 2041(a) (1) (B) and 2036(a) (1), Title 26 U.S. C.A.

The pertinent provisions of the 1954 Internal Revenue Code read in part:

"§ 2041. Powers of appointment

"(a) in general.—The value of the gross estate shall include the value of all property * * *—

"(1) Powers of appointment created on or before October 21, 1942.—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

·"(A) by will, or

"(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038 inclusive;

but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. * * * *"

"§ 2036. Transfers with retained life estate

"(a) General rule.—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or * * * *"

▓▓ In substance, petitioner's first contention is that the decedent did not exercise the general power of appointment provided by the terms of the trust agreement. By the terms of the trust, the trustee was directed to pay the de-

cedent only "so much of the income as the Trustee in his discretion shall deem advisable and to accumulate the remaining income and add it to the principal of the trust fund during the life of my said son." What possible right the decedent might have had under the terms of the trust and whether he exercised a general power of appointment must be determined under the applicable state law. Estate of Rogers v. Commissioner, 1943, 320 U. S. 410, 64 S.Ct. 172, 88 L.Ed. 134. At the time the trust was created, Matthew F. Gartland was domiciled in Indiana. By paragraph 12 of the trust, he selected the law of New Jersey to be applicable to the terms of the trust. The situs of the trust property after August 6, 1929 was in New York. It is immaterial which state law is applied. Decedent, by the terms of the trust, received only a hope or expectancy to receive the income from the corpus of the trust. In re Uhl's Estate, 7 Cir., [Indiana], 1957, 241 F.2d 867, 869; Herzog v. Commissioner of Internal Revenue, 2 Cir., [New York], 1941, 116 F.2d 591, 593. See Hardenburgh v. Blair, 1879, 30 N.J.Eq. 645. In a suit by the decedent to force the trustee to pay him all the income without the letter of 1931 and the ratification of 1938, the trustee could have replied that he elected not to pay him. The Law of Trusts, Scott, 2d ed., 1956, Vol. 2, § 155, p. 1083; Handbook of the Law of Trust, Bogert, 2d ed., 1942, Ch. 4, § 46, pp. 166–7. Paragraph 8 of the trust authorized the decedent "to amend or terminate the agreement in whole or in part and to change any beneficial interest." There appears to be no dispute, nor could there be, that by this authority the decedent had a general power of appointment. The letter of 1931, ratified by the formal document of 1938, in which decedent employed the authority of paragraph 8, canceled the original provision in the agreement and in lieu thereof directed the trustee to pay decedent the income "during his life." This amendment changed the decedent's hope or expectancy to receive the income, to a vested right to the income, whereby he could compel the trustee to pay him the income. Obviously, by the letter of 1931 and its ratification in 1938, decedent exercised his general power of appointment.

■ Petitioner argues that there was a lack of the necessary element of intent by the decedent to exercise the general power of appointment, either in the letter of 1931 or in the document of 1938, and that these writings reveal no words of appointment. Intent is an essential element to exercise a power of appointment in New York, Indiana and New Jersey. In the Matter of Spitzmuller, 1951, 279 App.Div. 233, 109 N.Y.S.2d 1, affirmed 304 N.Y. 608, 107 N.E.2d 91; Farnum v. Pennsylvania Company for Insurance on Lives & Granting Annuities, 1916, 87 N.J.Eq. 108, 99 A. 145, affirmed 87 N.J. Eq. 652, 101 A. 1053; Bullerdick v. Wright, 1897, 148 Ind. 477, 47 N.E. 931. In Bullerdick v. Wright the Court announced in 47 N.E. 931, 932–933:

"The authorities uniformly affirm the doctrine that it is not essential to refer in express terms to the power, if an intention to execute it otherwise plainly appears; and any words or expressions indicating an intention to exercise the power will operate to that effect."

The decedent in his ratification of 1938 expressly referred to paragraph 8 of the trust, and indicated by his "words or expressions" an intention to exercise the general power of appointment.

Petitioner next urges that since the decedent was the real beneficiary of the trust, as evidenced by the power given him under paragraph 8 of the trust, the trustee would have given him the income if the decedent had orally expressed a mere wish for it. As a matter of fact, paragraph 8 of the trust required "an instrument in writing" to exercise the power. Decedent exercised the power in writing, and it was after this that the trustee paid him the accumulated and current income.

■ Petitioner next argues that since the decedent did not attempt to con-

trol or change the disposition of the trust property at his death, he did not by the documents of 1931 and 1938 exercise his power of appointment. This argument is equally untenable. The exercise of a power of appointment is no less an exercise, because the decedent did not by the exercise control or change the disposition of the property at his death. Petitioner probably means by his argument that the exercise of a general power of appointment was not taxable, because he did not change the disposition of the trust property. Section 2041 imposes the tax upon the exercise of a pre 1942 general power of appointment and not upon the disposition of property by the exercise.

Prior to the 1942 amendment of the 1939 Internal Revenue Code (26 U.S.C.A. Int.Rev.Acts, § 403, 1946 ed.), the statutes applicable to the exercise of a general power of appointment included the words "to the extent of any *property passing* under a general power of appointment." (Emphasis supplied.) The 1939 Internal Revenue Code (26 U.S.C.A. § 811, 1940 ed.), is typical and read in part:

"§ 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *—

* * * * * *

"(f) *Property passing* under general power of appointment. To the extent of any *property passing* under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after his death, or (3) by deed under which he has retained for his life or any period not ascertainable without reference to his death or for any period which does not in fact end before his death (A) the possession or enjoyment of, or the right to the

income from, the property, or * * *" (Emphasis supplied.)

In Helvering v. Grinnell, 1934, 294 U.S. 153, at page 155, 55 S.Ct. at page 354, 79 L.Ed. 825, the Supreme Court in construing a similar statute portrayed the importance of the words "property passing" when it said:

"The crucial words are 'property passing under a general power of appointment exercised by the decedent by will.' Analysis of this clause discloses three distinct requisites—(1) the existence of a general power of appointment; (2) an exercise of that power by the decedent by will; and (3) the passing of the property in virtue of such exercise."

This requirement of property passing was eliminated by the 1942 amendment of the Internal Revenue Code and was omitted from the 1951 Powers of Appointment Act, 26 U.S.C.A. § 811(f), which in substance was the same as the present section 2041. Congress, by the omission of the words "property passing" from the statute, intended that a tax be imposed by section 2041, not upon the "property passing," but upon the exercise of the general power of appointment where it existed, regardless of whether property passed under the exercise of the power of appointment or whether there was a change in the disposition of the trust property at the death of the decedent. See Keating v. Mayer, 3 Cir., 1956, 236 F.2d 478 and Wilson v. Kraemer, 2 Cir., 1951, 190 F.2d 341, certiorari denied 342 U.S. 859, 72 S.Ct. 85, 96 L.Ed. 646.

In discussing the 1951 Powers of Appointment Act, the Senate Committee Report clarified the intent and purpose of Congress in eliminating the requirement of passing of property by the exercise of a general power of appointment. Senate Report No. 382, 82nd Congress, 1st Sess., 2 U.S.Code Congressional and Administrative News, 1951, pp. 1530, 1531–1532, reads in part:

"Section 1 of the bill amends section 811(f) of the code, relating to

estate tax on powers of appointment. The new section 811(f) (1) deals with preexisting powers, i.e., powers created on or before October 21, 1942, the date of enactment of the 1942 act. As to such powers it restores the situation which existed prior to that date, i.e., only the exercise of a general power of appointment is taxed. An amendment by your committee makes it clear that a complete release of a preexisting power at any time is not taxable.

"The former statute taxed property 'passing' under a general power of appointment exercised by the decedent. This sometimes gave rise to litigation where the decedent appointed part or all of the property to persons who would also have taken it under the terms of the original instrument creating the power. The bill eliminates this possibility by taxing all property with respect to which the decedent has 'exercised' a general power of appointment.

"With this exception, the intent of the bill is to restore the law regarding preexisting powers as it existed prior to the 1942 act."

In determining the taxability of the exercise of a general power of appointment, the federal law and not the state law is applicable. Estate of Rogers v. Commissioner, supra. Congress intended that the tax be imposed upon "all [the] property [in the trust estate] with respect to which the decedent has exercised a general power of appointment." In the instant case, the decedent exercised his power of appointment, and it is immaterial so far as the "exercise" is concerned that no change was made in the remaindermen as provided by the trust agreement.

 Petitioner next contends that the decedent did not exercise his power of appointment because his letter of 1931 and the ratification of 1938 to take the income were a nullity, since under the New York Statute, the trustee could not accumulate income and was required to pay the income to the decedent. Prior to September 1, 1959, section 16 of the New York Personal Property Law provided as follows:

"An accumulation of the income of personal property directed by any instrument sufficient in law to pass such property is valid:

"1. If directed to commence from the date of the instrument, or the death of the person executing the same, and to be made for the benefit of one or more minors then in being, or in being at such death, and to terminate at or before the expiration of their minority.

"2. If directed to commence at any period subsequent to the date of the instrument or subsequent to the death of the person executing it, and directed to commence within the time allowed for the suspension of the absolute ownership of personal property, and at some time during the minority of the persons for whose benefit it is intended, and to terminate at or before the expiration of their minority.

"3. All other directions for the accumulation of the income of personal property, not authorized by statute, are void. In either case mentioned in subdivisions one and two of this section a direction for any such accumulation for a longer term than the minority of the persons intended to be benefited thereby, has the same effect as if limited to the minority of such persons, and is void as respects the time beyond such minority." Personal Property Law, Vol. 40, section 16, McKinney's Consolidated Laws of New York, Annotated, 1949. Repealed N.Y.Sess. Laws 1959, c. 453 §§ 1, 4, effective September 1, 1959.

(Burns' Ind.Stat.Annotated, 1933, section 51–102 contains, in effect, a similar statute.) Petitioner again construes the original trust agreement to mean that Leo M. Gartland was entitled to the income from the trust property during his life. As has already been set forth, the

decedent did not have the right to the income until he exercised his power of appointment. Since Leo M. Gartland was born in 1895 and married in 1919, as disclosed by the Federal estate tax return, it is reasonable to infer that his children were minors in 1931. Assuming the provision for the accumulations of income was invalidated by the New York Statute, it does not follow that Leo M. Gartland, who could only receive the income at the discretion of the trustee, would have been entitled to this income. The accumulated income would have been paid to the person or persons presumptively entitled to the next eventual estate. In re Berthet's Estate, 1959, 22 Misc.2d 7, 196 N.Y.S.2d 354; In re Roeser's Will, Sur.1956, 155 N.Y.S.2d 108; In re Ball's Will, Sur.1940, 24 N.Y.S.2d 432; Central Union Trust Co. of New York v. Trimble, 1930, 255 N.Y. 88, 174 N.E. 72; St. John v. Andrews Institute for Girls, 1908, 191 N.Y. 254, 83 N.E. 981. It must be concluded that even if the provision for the accumulations of income was void by virtue of the New York Statute, the decedent did and was required to exercise the general power of appointment to obtain the income from the trust property during his life.

■ Petitioner further claims that the 1945 release executed by decedent avoided the tax under section 2041(a) (1) (B). Treasury Estate Tax Regulation, 1954 Code, 26 CFR § 20.2041–2(d), 1961 reads:

> "If at or before the time a power of appointment is relinquished, the holder of the power exercises the power in such a manner or to such an extent that the relinquishment results in the reduction, enlargement, or shift in a beneficial interest in property, the relinquishment will be considered to be an exercise and not a release of the power."

Clearly, the release executed in 1945 by the decedent was not a complete release, as required by section 2041(a) (1) (B), of his power of appointment, because before the execution of the release, he had taken a life estate which shifted the "beneficial interest" in the trust property from the manner in which it was to be distributed by the terms of the original trust agreement.

■ This brings forward petitioner's final contention that even if the decedent's three documents of 1931, 1938 and 1945 did constitute an exercise of a pre 1942 general power of appointment, such exercise was not a disposition of the trust property of the type described in section 2041(a) (1) (B) and section 2036(a) (1). It must be kept in mind, in determining this issue, that section 2041(a) (1) (B) imposes a tax upon the exercise of a pre 1942 power of appointment by including in the gross estate the entire value of the trust property regardless of whether property passed by virtue of the exercise, where the power existed in the decedent by the terms of the trust and was exercised in a manner prescribed by section 2041(a) (1) (B) and section 2036(a) (1). Reading sections 2041(a) (1) (B) and 2036(a) (1) together, to determine whether a general power of appointment is exercised in the prescribed manner, the applicable wording of these statutes is (§ 2041(a) (1) (B)) "a disposition which is of such a nature that if it were a transfer of property owned by the decedent, such property would be includible in decedent's gross estate" such as (§ 2036(a) (1)) "a transfer * * * by trust or otherwise, under which he has retained for his life * * * (1) * * * the right to the income from, the property * * * *" In referring to the transfer of property, we find that section 2041(a) (1) (B) requires only a disposition which is of such a nature that if it were a transfer and not a transfer as required by section 2036(a) (1) such property would be includible in decedent's gross estate. Thus, for tax purposes under section 2036(a) (1), a decedent is required to make an actual transfer of the trust property, retaining the life income, but under section 2041(a) (1) (B) a decedent is not required to make an actual transfer. It also must be noted that section 2041(a) (1) (B) does not refer to a transfer of property

owned by the decedent but to a transfer of property as if it were owned by the decedent. Section 2041(a) (1) (B) speaks of a general power of appointment for tax purposes as if the decedent owned the property. The remainders over, under the terms of the trust agreement, existed subject to being divested by the exercise of the general power of appointment. In effect, when decedent took only the life estate, considering that he was the owner of the corpus of the trust, he vested in or transferred, by trust or otherwise, the corpus of the trust to the remaindermen, provided he made no further exercise of his general power of appointment. In other words, by the taking of the life estate in the corpus of the trust, a decedent makes a disposition of such a nature whereby he transfers the property by trust or otherwise, retaining a life income. When the decedent, in the instant case, released the power of appointment in 1945, after taking the income, he caused the remainders to become vested at that time, but did not change the nature of the transfer or disposition of the trust property. This Court concludes, therefore, that the exercise of the power of appointment by Leo M. Gartland effectuated the type of transfer or disposition which is described and required by section 2041(a) (1) (B). See Lee v. Commissioner of Internal Revenue, 1932, 61 App.D.C. 33, 57 F.2d 399; Wear v. Commissioner of Internal Revenue, 3 Cir., 1933, 65 F.2d 665. Both Wear and Lee were decided under the applicable statute prior to 1942, and were overruled in Helvering v. Grinnell, supra, due to the requirement in the statute of "property passing under a general power of appointment." This Court believes that these cases would not have been overruled had the present wording of the statute been in effect. Helvering v. Grinnell, supra, is no longer decisive under the present wording of the statute. As was said in the Senate Report previously referred to, "[w]ith this exception [of property passing] the intent of the bill is to restore the law regarding preexisting powers as it existed prior to the 1942 act." In determining whether the transfer or disposition in the instant case was a transfer or disposition of the type required by the present statute, consideration must be given to the intent of Congress to tax the exercise of the power of appointment although no property actually passed by the exercise. This solution of the issue is borne out by the example given in Treasury Estate Tax Regulation, 1954 Code, 26 CFR § 20.2041–2(c), 1961 which reads:

"Example (2). S created a trust in 1930 to pay the income to A for life, remainder as B appoints by an instrument filed with the trustee during B's lifetime, and in default of appointment remainder to C. B exercised the power in 1955 by directing that after A's death the income be paid to himself for life with remainder to C. If B dies after A, the entire value of the trust property would be included in B's gross estate, since such a disposition if it were a transfer of property owned by B would cause the property to be included in his gross estate under section 2036(a) (1). If B dies before A, the value of the trust property less the value of A's life estate would be included in B's gross estate for the same reason."

The petitioner has cited Estate of Bernard E. Denzer, 1957, 29 T.C. 237, in support of his position that by taking the life estate there was no transfer of the property under section 2041(a) (1) (B). In that case, the question was whether one-half of the trust property was included in the decedent's estate by section 811(c) (1) (B), 26 U.S.C.A. (1951 Act), which is now section 2036. Moreover, the facts in that case disclose that the son of the Settlor had a life estate in the trust property and there was neither an actual transfer of this trust property nor the reservation of a life estate.

In accordance with the views expressed, this Court holds that the Tax Court properly included in the decedent's gross estate the value of the entire corpus of the trust created by Matthew F. Gartland. The decision of the Tax Court is affirmed.