**BANK OF CLARKSDALE, Executor of the Estate of Mae Suddoth Barr, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. DC6327.**

United States District Court
N. D. Mississippi,
Delta Division.

Dec. 13, 1963.

Pat D. Holcomb, Holcomb & Curtis, Clarksdale, Miss., for plaintiff.

H. M. Ray, U. S. Atty., Oxford, Miss., for defendant.

CLAYTON, District Judge.

This is a suit for refund of income taxes in the amount of $20,598.34 which were paid by the Bank of Clarksdale for the fiscal year ending January 31, 1960, under unusual circumstances.

The basic facts which give rise to this cause have been the subject of other litigation both in this court and, in other aspects, in the state courts. Facts pertinent to this case are now before the court without dispute and will be briefly summarized.

W. B. Barr and his wife Mae Suddoth Barr executed a joint will dated July 15, 1932, whereby Mae Suddoth Barr was bequeathed a life estate in all the property of W. B. Barr with a general power of appointment [1] with the remainder,[2] if any, to go to named takers.

On June 28, 1933, W. B. Barr died and the jointly executed instrument was probated in the Chancery Court of Coahoma County, Mississippi, on July 6, 1933, as the will of W. B. Barr. An administration was had on his estate under this will in said court with plaintiff bank acting as Executor. Some twenty-four years after his death Mae Suddoth Barr died on October 14, 1957. After her husband's death, Mrs. Barr took no affirmative action with respect to the general power of

1. "ITEM 2.
"The said W. B. Barr does hereby will devise and bequeath to his wife, the said Mae Suddoth Barr, his entire estate, real, personal and mixed or whatever kind and wheresoever located for and during the term of her natural life to be held and dealt with by her as she may see fit, she to have absolute control over all of said property with power to spend or negotiate or sell any and all of said property as she may see fit without accounting to anyone therefor, provided the said Mae Suddoth Barr shall at the date of the death of the said W. B. Barr be not incapacitated in mind or body; but in the event the said Mae Suddoth Barr shall be incapacitated as aforesaid by some misfortune, then and in that event the Bank of Clarksdale, Clarksdale, Mississippi, shall be appointed by the Chancery Court of Coahoma County, Mississippi, to take charge of and manage all of said estate for the full and complete benefit of the said Mae Suddoth Barr, and to manage and expend said estate in such a manner that the said Mae Suddoth Barr shall always be provided with every comfort and have the best attention known to Medical Science, even to the entire extinguishment of said estate, if necessary."

2. "ITEM 17.
"Upon the death of the said Mae Suddoth Barr, we will, devise and bequeath the residue and remainder of said estate, real, personal and mixed, remaining after the payment of the above mentioned bequests, to the parties hereinafter mentioned in this item of this will, and in the proportions herein set out, which proportionate parts of said residue and remainder shall be arrived at and given as follows: * * *"

appointment and the same document was again probated on November 12, 1957, as the will of Mrs. Barr in the Chancery Court of Coahoma County. The Bank of Clarksdale duly qualified as Executor.

The Bank liquidated the estate and reported the proceeds as income to Mrs. Barr's estate. Income taxes were paid but, thereafter, the Bank contended that only estate taxes were payable, claiming that Mrs. Barr had exercised the power of appointment by her will, and, therefore, the proceeds should have been included in her gross estate under § 2041 (a) (1) (A), Internal Revenue Code of 1954 (Title 26, § 2041(a) (1) (A), U.S. C.) [3].

Claim for refund was denied and suit was filed in this court therefor. Before disposition was reached, defendant made refund and the suit was dismissed without prejudice since the issues were then moot.

Thereafter, the defendant reassessed virtually the same tax against the plaintiff bank in a new identity "Trustee for the Remaindermen of W. B. Barr, Deceased". Denying the new identity the Bank of Clarksdale paid the taxes as assessed, filed claim for refund which was denied, and then filed this suit.

Both plaintiff and defendant have moved for summary judgment and upon submission to the court on memorandum briefs by the parties, only two questions, both of law, are presented. The principal and basic question is: Did Mrs. Barr exercise her pre-1942 general power of appointment by her will within the meaning of the revenue statute? That question will be considered first.

The aforementioned document was the will of W. B. Barr. It also was the will of Mae Suddoth Barr. 57 Am.Jur., p. 40, § 2; Hill, et al. v. Godwin et al., 120 Miss. 83, 81 So. 790 (1919).

In Hill, the Supreme Court of Mississippi said:

"While two or more persons may jointly execute a single testamentary document, sometimes spoken of as a joint, double, mutual, or reciprocal will, it is well settled in America that this document constitutes the valid separate will of each of those executing it, and that on the death of each it may be probated as a will. * * *

"Considering this as the separate will of Jane Hill, and using the singular pronoun wherever the plural pronoun appears in the will, the words 'our heirs' would then read 'my heirs.'"

■ The fact that Mrs. Barr executed her will before she came into possession and control of the estate of her husband, and before the general power of appointment became fixed in her by the will of her husband is of no consequence. An anterior will is effective with respect to after acquired property and rights in property in this state. § 657, Mississippi Code 1942 (Recompiled). See also Blackburne et al. v. Brown (D.C.E.D.Pa., 1929) 35 F.2d 963, aff'd. C.C.A. 3, 43 F.2d 320, A.L.I. Restatement of the Law of Property, Vol. 111, § 344.

Thus, following the teaching of Hill, supra, using the singular pronoun whereever the plural pronoun appears, Item 17 [4] of the will of Mrs. Barr would read "I will, devise and bequeath the residue and remainder * * *".

We are not concerned with when or how title to the Barr property passed under state law. Nor are we concerned with deciding whether anything was done by Mrs. Barr which would, under state law, affect title to any of the Barr property. The *estate tax* is imposed upon the

---

3. "(a) *In general.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

"(1) *Powers of appointment created on or before October 21, 1942.*—To the extent of any property with respect to which a general power of appointment created *on or before October 21, 1942,* is exercised by the decedent—

"(A) *by will,* or"

4. Footnote 2, supra.

*exercise* of a pre-1942 general power of appointment, and not upon the effect (if any) of the exercise upon disposition of the property. Gartland's Estate v C. I. R. (7 Cir. 1961), 293 F.2d 575; Keating v. Mayer, (3 Cir. 1956), 236 F.2d 478 and Wilson v. Kraemer, (2 Cir. 1951), 190 F. 2d 341, certiorari denied 342 U.S. 859, 72 S.Ct. 85, 96 L.Ed. 646.

After the death of W. B. Barr and during her lifetime, under her general power of appointment, Mrs. Barr could have destroyed every right created by Item 17 of this document. She elected not to do so. She expressed this election by her will. This was an "exercise" by her of the general power of appointment within the meaning of the statute in favor of the remaindermen under said Item 17, which first made the estates which vested by this item indefeasible. And, this is not affected by what the Supreme Court of Mississippi said when they were dealing with this very same document in McClelland v. Bank of Clarksdale, 238 Miss. 557, 119 So.2d 262 (1960). That court succinctly stated the questions before it when it said:

> "A petition was filed for construction of a will jointly executed by husband and wife. The husband predeceased his wife, and the bequests and devises by the husband gave his wife a life estate with unlimited power of disposition, with a remainder in named takers. *She did not exercise the power.* Some of the remaindermen predeceased the life tenant. The principal questions are (1) whether the unlimited power of disposition enlarged the widow's life estate to one in fee simple, and (2) if not, whether the will created vested or contingent remainder estates in the remaindermen who predeceased the life tenant. The chancery court correctly held that the

widow received only a life estate, and the remainders in the second takers vested at testator's death, so we affirm the trial court's decree." (Emphasis added.)

The court in that case was not (and could not have been) concerned with the federal revenue statute which is of primary concern here. That court's attention was sharply focused on the two questions stated by it. That court's statement that "She did not exercise the power" obviously was concerned only with the remainder interests established by the document. Viewed in this light, it was unnecessary for the court to say (what it clearly meant), "She did not exercise the power *adverse to the remaindermen*". Hence, the language of that court has no other meaning here.

Lending strength to the disposition being made here are two cases which were overruled in part[5] but which give clear expression to the rules applicable here. These cases are Lee v. Commissioner of Internal Revenue[6] and Wear et al. v. Commissioner of Internal Revenue[7]. Those cases were dealing with an earlier statute which, as finally construed, required not only that the general power be exercised by will, but also *that title pass* as a result of the exercise. They would not have been overruled, it is believed, if they had been dealing with the present statute. (See Gartland's Estate v. C. I. R., supra, 293 F.2d at page 584.)

In Lee, the court was dealing with a situation whereby the first donee (with a general power of appointment) exercised it by will in favor of the second donee who would have succeeded to the remainder by the will of the original donor absent exercise of the power by the first donee. The court said, inter alia:

> "These conclusions similarly affect the exercise of the power of appoint-

---

5. Helvering, Commissioner of Internal Revenue v. Grinnell, 294 U.S. 153, 55 S. Ct. 354, 79 L.Ed. 825 (1934). (This case is no longer authority under the wording of the present statute.)

6. (1932) 61 App.D.C. 33, 57 F.2d 399.

7. (3 Cir. 1933) 65 F.2d 665.

ment by Robert E. Lee transferring in remainder the moiety of the estate of his father to his brother, George Bolling Lee. It is argued that the tax should not apply to that transfer, inasmuch as without it the moiety would nevertheless have become the property of George Bolling Lee as devisee under his father's will. This view cannot be sustained. It is true that, if Robert E. Lee at the time of his decease had entirely omitted to exercise the power of which he was the donee, his brother, George Bolling Lee, would have held the moiety of the former by devise under the will of W. H. F. Lee. But, on the other hand, Robert E. Lee was entitled during his lifetime to appoint the moiety to any other person, and thus defeat the devise to George Bolling Lee. Therefore the exercise of this power by Robert E. Lee at least confirmed the title of his brother to the moiety in question. Chanler v. Kelsey, 205 U.S. 466, 27 S.Ct. 550, 51 L.Ed. 882.

" 'The question here, then, is, not whether there has been, in the strict sense of that word, a "transfer" of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights.' Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991, 69 A.L.R. 758." (Emphasis added.)

"Accordingly, in this case the exercise by the donee, Robert E. Lee, of the power of appointment vested in him, was the 'generating source' of the title of Mary M. Lee for her life or widowhood, and of George Bolling Lee in remainder, of the moiety held by the donee in the es-

tate of W. H. F. Lee. Accordingly, the imposition of the transfer tax under section 402(e) is affirmed."

In Wear, the court was dealing with a situation strikingly similar to that in Lee and to that in the case with which we are now concerned. The first donee under the will of his father (with a general power of appointment) gave the property by his own will to his children who, absent exercise of the power by him would have taken under the will of their grandfather (original donor) at the death of their father (first donee). After quoting from Lee with favor, that court, in part, said:

"We have not been convinced that on the death of the donee nothing happened in respect to the property of the power and in respect to the daughters' right to the property by the exercise of the power. *Before its exercise the daughters of the decedent, the twice named recipients, had under Pennsylvania law an estate in the property of the power. But it was a defeasible estate, not unlike the interest of a beneficiary in a policy of life insurance where the insured has reserved, yet has not exercised, the right to change the beneficiary. Their estate was liable to be wholly taken away from them by the exercise of the power in favor of others.* So long as the donee lived and retained control over the disposition of the property the daughters ran that risk, which was akin to the risk of a change of beneficiaries in a policy of insurance. Not until the donee died did that risk disappear. Until then he stood in their way. *Therefore it was upon his death without exercising the power adverse to them that the estate of the daughters became indefeasible. Death, with an exercise of the power in their favor, was the event that wrought the change.* Then their estate, theretofore contingent upon the nonexercise of the power against them, became vested, like the interest of a beneficiary of a policy of life

insurance becomes vested upon the death of the insured without exercising a reserved right to change the beneficiary, the value of which must, under the cases, be included in the gross estate of the insured for purposes of taxation. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388. *The generating source of the change was the death of the donee without action adverse to them. That, too, was the generating source of the tax.* And such a tax, we hold, the federal government, under its sovereign power to levy taxes, may lawfully impose upon the exercise of a power effecting such a change, to be determined by actual results thereby brought about rather than by consideration of rules which define and limit title of property, Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758, and to be measured (rather than determined) by the value of the property passing." * * * (Emphasis added.)

Keating v. Mayer, supra, was dealing with almost identical facts. There the donee of a life estate with power of appointment devised the property to the remaindermen under donor's will. Here Mrs. Barr did the same thing by her will. Some of the language of the opinion in that case is apposite here. In part that court said:

"The taxpayer's second contention that even if, the decedent's will be construed to evidence an intention to exercise her power of appointment, that it did not constitute an 'exercise' under Pennsylvania law is nothing less than a contention that in order for an exercise to become operative under Section 811(f) *it must be an 'effective' exercise. The taxpayers' contention in this respect* is premised on the Orphans' Court's statement that the 'so-called exercise of the power of appointment' in this case 'is a nullity' because the decedent's children had come into title of the devised property by the terms of their great-grandfather's will (the creator of the power) 'without *any aid of the donee* of the power of appointment.' *It is plain to see that the Orphans' Court had focused its attention on the passing of title and not on the question as to whether the power of appointment had been exercised. Actually, it is implicit in the Adjudication that there was an exercise, albeit such exercise was deemed an ineffective element in the passing of title.*

* * * * * *

"(2) The circumstance that under Pennsylvania law *with respect to the passing of title* an appointment to the same persons who would take as remaindermen in default of appointment is of no effect—'a nullity'—is entirely irrelevant as far as the effective operation of the provisions of Section 811(f) as amended, is concerned.

* * * * * *

" * * * As to powers created prior to the October 21, 1942 date, the Act required (1) *possession* and (2) *exercise* of the power. It is with the latter provision that we are here concerned since the taxpayers agree that the statutory law applicable to the issue presented by this appeal is Sec. 811(f) of the 1939 Code, as amended by the Internal Revenue Act of 1942, Sec. 403 and further amended by the Powers of Appointment Act of 1951, Sec. 811(f) (1).

"(3) That Congress intended, with respect to the powers created prior to October, 1942, to include appointive property upon the exercise of the power' irrespective of whether there was a passing of title by virtue of such exercise, is demonstrated by the Committee Reports in connection with the Powers of Appointment Act of 1951.

* * * * * *

"We conclude from the foregoing that when Congress eliminated the requirement of 'passing' both in the

Revenue Act of 1942 and the Powers of Appointment Act of 1951, but retained in both Acts the requirement of exercise as to powers created prior to October 21, 1942, *that it could not possibly have intended that the exercise must be 'effective'*. No other conclusion is possible in view of the elimination of the requirement of 'passing' in both statutes. To hold otherwise would be, by judicial legislation, to put back into the statutes referred to that which Congress had eliminated—'passing' or otherwise stated, *'effective' exercise.*

\*     \*     \*     \*     \*

"(4) Summing up, Congress provided in the amended Act that an exercise 'by will' of a power created prior to October 21, 1942, makes the appointive property includible in the decedent's estate. Here by operation of the Pennsylvania Wills Act of 1947 the decedent's will 'exercised' the power. That 'exercise' is conclusive." (Emphasis added.)

Defendant contends that the general power was inter vivos since Mrs. Barr had only a life estate and that therefore the power could not be exercised by her will. Accepting as correct, on this point, the proposition that this will passed no title under state law and that it was a nullity as it might affect title under state law, nevertheless it evidenced and gave expression to the inter vivos election of Mrs. Barr not to diminish or destroy the remainder estates created by Item 17 of this document. She signed the document concurrently with her husband— an inter vivos affirmative act. She made no change after the death of her husband —an inter vivos election. She did nothing beyond the face of the document to affect the remainder estates. At her death her will spoke for her. Without regard to what, if anything, it accomplished under state law, it was and is a valid will. It evidenced for her and for the remainder interests, the inter vivos election under the general power in favor of the remainder estates. It thus was an "exercise" within the meaning of the revenue statute with which we are here concerned. Her will was just as effective to ripen and make indefeasible these remainder estates as any formal affirmative act during the lifetime of Mrs. Barr could have been.

Plaintiff is entitled to recover the full amount of the taxes paid.

The other question tendered and submitted by the parties is with respect to the "identity" of the plaintiff. Defendant made this assessment against plaintiff as "Trustee for the Remaindermen of W. B. Barr, Deceased" and contends, perhaps consistently with its position on the basic question, that this is a correct identity. Plaintiff vigorously contends that this is not its identity and never has been, but that, in this instance, it is the executor under the will of Mrs. Barr.

Plaintiff has no ownership claim in this situation. All of its interests are fiduciary in character. In the sale of the Barr property under direction of the state court, plaintiff acted as executor under the wills of both Mr. and Mrs. Barr. Whatever assets of either estate it now holds or may hereafter acquire will be subject to the orders of the Chancery Court of Coahoma County, Mississippi. In these circumstances this court has little concern with attempting to answer the hyper-technical and presently theoretical question of the "identity" of plaintiff. If this question has substance it will, in time, be answered, as it should be, by the courts of Mississippi.

Inasmuch as defendant has no duty or responsibility to trace or follow the proceeds of the judgment to be entered here in accordance with this opinion, plaintiff may receipt for the proceeds either as Executor under the will of Mae Suddoth Barr, as Executor under the will of W. B. Barr, as executor under both wills, or as "Trustee", as identified by defendant in making the assessment which gave rise to this suit. This court wants it made clear, however, that it specifically declines to make any determination which could in any way be construed to affect the actions of the state courts after re-

ceipt by plaintiff of said proceeds, or affect the rights of any person not a party to this cause in this court.

Order is being entered in accordance with this opinion.